83 A.3d 119

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Robert DIAMOND, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 10, 2013.

Decided Dec. 27, 2013.

478

Christa S. Dunleavy, Esq., Ann P. Russavage–Faust, Esq., Doylestown, Bucks County Public Defender's Office, for Robert Diamond.

Maureen Flannery Spang, Esq., Bucks County District Attorney's Office, Amy Zapp, Esq., Harrisburg, PA Office of Attorney General, Stephen B. Harris, Esq., David Ward Heckler, Esq., Michelle Ann Henry, Esq., Doylestown, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice BAER.

This is a direct appeal from an order of the Bucks County Common Pleas Court, imposing two death sentences after Appellant Robert Diamond pled guilty to the first degree murders of Angel Guadalupe and Reginald Woodson. Appellant raises claims of trial court error relating only to the penalty phase of trial, including challenges to the finding of statutory aggravating circumstances and the failure to find mitigating circumstances, challenges to the weighing of aggravating and mitigating circumstances, and a claim that his sentence of death was based on arbitrary factors. As we conclude that Appellant's issues lack merit, we affirm his conviction and judgment of sentence.[1]

Because Appellant pled guilty to the offenses at issue, the relevant facts were gleaned from the suppression hearing, the guilty plea proceeding, and the sentencing hearing. In 2002, Appellant began working as a forklift operator at the Simon & Schuster book warehouse in Bristol Borough, Bucks County. Appellant, who is Caucasian, had engaged in several arguments with fellow employee Kalif Crump, who is African American, and believed that management had unfairly sided

1. This Court automatically reviews direct appeals from the imposition of death sentences pursuant to 42 Pa.C.S. § 9711(h)(1).

with Crump. Appellant had also engaged in verbal confrontations with Crump's mother, Debra Vorters, who likewise worked at Simon & Schuster. Shop Steward Reginald Woodson, who was friendly with Crump and Vorters, would intervene in some of the altercations, and separate the parties.

In April of 2008, management terminated Appellant's employment after he failed to report to work for several days without explanation. Nearly four months later, on the afternoon of August 1, 2008, Appellant made an audio tape of what he referred to as his "last will and testament" as he drove to Simon & Schuster to seek revenge for the purported harassment he had suffered during his employment. In the recording, Appellant stated that he had no place in the world, that the last six years he spent at Simon & Schuster had been a "living hell," and that time was running out because he lacked money to pay his rent.

Appellant further stated that Crump was "the main perpetrator of all this shit but people gave him the intelligence and the will and the support to f_ _k with the good white man cause it'd be good for black power, that's Debra [Vorters] and Reggie [Woodson], and I don't think I can wait any longer than today." Commonwealth Exhibit 30. As he drove into the Simon & Schuster parking lot, Appellant stated "[t]hat little black boy's car is not there, so unless he's got a ride, I'll have to hope that there's higher justice for him." *Id.* Appellant ended his oral diatribe by facetiously thanking his mother and sisters for not helping him obtain his inheritance from his aunt. He stated, "if I had one little bit of that money, five, ten, I could get this little kick out of my system, you know, and provide for myself until I either die of natural causes or clean my act up." *Id.*

Appellant arrived at Simon & Schuster at nearly 3:30 p.m., the precise time that employees working his former shift would leave for the day. Appellant was well aware that when the shift ended, employees waited in a line at the door to "clock out" and exit the warehouse onto the loading dock platform, which was adjacent to the parking lot. Appellant parked his car in the lot next to the van of Sonia Santiago,

who was seated in the vehicle with her three children, waiting to pick up her husband, Miguel Santiago, after his shift. At that time, employee Vanessa Gonzalez observed fellow employee Angel Guadalupe exit the building onto the loading dock, climb down the stairs to the parking lot, and walk towards Guadalupe's white sports utility vehicle ("SUV"), a vehicle similar to that driven by Crump.[2]

While brandishing a Smith and Wesson .40 caliber handgun, Appellant walked in front of Sonia Santiago's van towards Angel Guadalupe's SUV, said "shh" to Santiago, and gestured for her to remain quiet. As Guadalupe backed his SUV out of the parking space, Appellant ran over and began firing shots into the vehicle. Guadalupe attempted to exit the SUV, but Appellant continued firing until at least six rounds had been discharged, and Guadalupe had fallen from the vehicle onto the road. It was eventually determined that two bullets resulted in fatal injuries.

Several individuals observed Appellant shoot Guadalupe, including: Gonzalez, who was standing on the loading dock; Santiago, who quickly drove her van away from the scene after she observed the shooting; the driver of a SEPTA bus carrying seven passengers, which was located fifteen to twenty yards away from Guadalupe's SUV; a resident in a retirement community located approximately twenty to twenty-five feet behind Guadalupe's vehicle who called 9–1–1 when the shots were fired; a security guard in a nearby guard shack; and individuals smoking cigarettes on the loading dock.

As captured by the Simon & Schuster surveillance camera, at 3:34 p.m., after killing Guadalupe, Appellant walked behind his SUV, released the gun's magazine catch, checked to see how many rounds were left, and inserted the magazine back into the gun. Appellant thereafter encountered others in the parking lot, but did not fire his weapon. Moments later, Woodson left the warehouse to investigate, walked toward Appellant, and asked him what he was doing. Woodson then abruptly turned away from Appellant, and ran up the stairs to

2. Unbeknownst to Appellant, Crump no longer worked at Simon & Schuster at that time.

the loading dock in an effort to get back inside the warehouse. When Woodson reached the top step, Appellant, who was then approximately twenty-nine yards away, fatally shot Woodson in the back. Gonzalez, along with other employees, was standing behind Woodson in the doorway of the loading dock when Woodson was shot, and Gonzalez observed Appellant fire his weapon. Maria Brown, a motorist driving by the warehouse at the time, also witnessed Appellant fire shots at Woodson.

Police officers arrived promptly and observed Guadalupe's body lying on the road. Upon seeing the officers, Appellant, who was still holding his weapon, raised the gun to his own head. The officers drew their weapons, and Appellant responded by stating, "I'm not shooting anymore." Notes of Testimony ("N.T."), Mar. 6, 2009, at 33. When the officers instructed Appellant to lay down his weapon and get on the ground, he complied, acting in a calm manner.

At approximately 3:45 p.m., additional police officers responded to the scene. Appellant told the officers that he had intended to kill himself, but that the officers arrived too quickly. The officers read Appellant his *Miranda*[3] warnings and transported him from the scene. After again being advised of his *Miranda* rights, Appellant admitted to police that he shot Guadalupe. He indicated that he did not personally know Guadalupe, who was of Hispanic descent, "but chose to shoot him anyway" ... because Appellant "just lumped them all together." N.T., Apr. 14, 2009, at 30, 32–33; N.T., Mar. 6, 2009, at 78. Appellant explained to the officers that he continued to shoot Guadalupe until he stopped moving.

Appellant also admitted to shooting Woodson, who was African American. Appellant stated, "Reggie [Woodson] came towards me ... Reggie thought that he was going to talk me down, but saw that wasn't going to happen and began trucking and ducking away ... and then I shot him too." N.T., Apr. 14, 2009, at 31–32; N.T., Mar. 6, 2009, at 79. Appellant told the officers that prior to the shooting he pondered whether he

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

should "let them get away with what they did," and decided to just "go there and do it." N.T., Apr. 14, 2009, at 29–30; N.T., Mar. 6, 2009, at 80. Appellant further expressed disappointment that he was not able to confront Crump, and hoped Crump would face a "higher justice." N.T., Apr. 14, 2009, at 134. Appellant remained calm and attentive during questioning, did not appear agitated, spoke in a normal tone of voice, showed appropriate emotion, made eye contact with the officers, and was articulate.

Autopsies performed on the victims established that Guadalupe's cause of death was gunshot wounds to the head and mouth, and that Woodson's cause of death was a gunshot wound to the back. Further, police officers seized several items, including the book *Black Power the Politics of Liberation* from the passenger side of Appellant's vehicle. Officers also seized a three-page hand-written document from Appellant's home that Appellant had drafted on the day of the murder, which purported to explain the behavior that he planned to execute later that day. The document stated in part, as follows:

> I worked at Simon and Schuster and was endlessly harassed and browbeaten, oppressed in every conceivable fashion by one Kalif Crump, who enjoyed lavish and deceptively effective support from Reginald Woodson and Debra Vorters while management gleefully watched from their impregnable seat of rule. How messy would things get for people in power to take action. *I AM NO RACIST.* May this action save hundreds of innocent whites from tyranny and *adversary.* (Webster's) GOD HELP US.

N.T., Apr. 14, 2009, at 106–11; Commonwealth Exhibit 33 (emphasis in original).

On October 16, 2008, the Commonwealth charged Appellant with, *inter alia,* two counts of first degree murder. Appellant thereafter filed a pretrial motion to suppress his statements to police, which the trial court denied, following a hearing on March 6, 2009. On April 13, 2009, Appellant entered an open guilty plea to two counts of first degree murder, possession of an instrument of crime, recklessly endangering another per-

son, and firearms not to be carried without a license.[4] As a factual basis for the plea, the Commonwealth presented the testimony of Detective Randy Morris, Detective David Michael Kemmerer, and Corporal Kurt Tempinski, an expert in ballistics and firearms. The officers relayed in detail what occurred at the crime scene, as described *supra*, and reiterated the statements Appellant gave to police immediately after the murders in which he confessed to shooting both victims. The Commonwealth further admitted into evidence, *inter alia*, the murder weapon and ammunition, the victims' autopsy reports, the audio recording and written note made by Appellant explaining his conduct on the day of the murders, and the Simon & Schuster surveillance video. Because the Commonwealth was seeking the death penalty, the matter proceeded to a penalty hearing. Appellant waived his right to a jury trial in the penalty phase, and a three-day bench trial was conducted before the trial court judge.

Following the penalty hearing, and relating to the murder of Angel Guadalupe (Count One), the court found one aggravating circumstance, that the defendant "has been convicted of another murder committed in any jurisdiction and committed either before or at the time of the offense at issue." 42 Pa.C.S. § 9711(d)(11) ("multiple murder aggravating circumstance"). The court additionally found three mitigating circumstances: that the defendant "has no significant history of prior criminal convictions," *id.*, § 9711(e)(1); that the defendant "was under the influence of extreme mental or emotional disturbance," *id.*, § 9711(e)(2); and the mitigating circumstance relating to "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." *Id.*, § 9711(e)(8) ("catchall mitigating circumstance"). As evidence of the catchall mitigating circumstance, the trial court cited Appellant's guilty plea to all charges and his waiver of the defenses of diminished capacity and insanity. N.T., Apr. 17, 2009, at 5. The court concluded that the aggravating circumstance outweighed the mitigating

4. 18 Pa.C.S. §§ 2502(a), 907(a), 2705, and 6106(a)(1), respectively.

circumstances, and sentenced Appellant to death for the murder of Guadalupe.[5]

Relating to the murder of Woodson (Count Two), the trial court found two aggravating circumstances: that in the commission of the murder Appellant created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7), and the multiple murder aggravating circumstance of Section 9711(d)(11); and two mitigating circumstances: that Appellant was under extreme mental or emotional disturbance, *id.*, § 9711(e)(2), and the catchall mitigator, again citing Appellant's guilty plea and waiver of defenses.[6] Finding that the aggravating circumstances outweighed the mitigating circumstances, the trial court imposed a second sentence of death for the murder of Woodson. No further penalty was imposed on the remaining offenses.

The trial court subsequently denied Appellant's motion for reconsideration of sentence, permitted trial counsel to withdraw, and appointed the Public Defender's Office to represent Appellant. Appellant thereafter filed in this Court a petition to stay the proceedings due to his incompetency. We denied the petition to stay, but remanded the matter to the trial court for a hearing and determination on whether Appellant was competent to proceed with his direct appeal. Following a hearing on December 14, 2011, the trial court determined that

5. Concerning the Guadalupe murder, the trial court concluded that there was insufficient evidence to support the Section 9711(d)(7) aggravating circumstance that "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense." The court also rejected Appellant's reliance on the Section 9711(e)(3) mitigating circumstance, that "the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." *Id.*

6. Regarding the Woodson murder, the trial court declined to find the mitigating circumstance that Appellant had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1), because Appellant had been convicted of murdering Guadalupe. Similar to the Guadalupe murder conviction, the trial court also declined to find the mitigating circumstance that Appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. *Id.* § 9711(e)(3).

Appellant was competent. Appellant does not challenge the trial court's determination of competency in this appeal.

In his direct appeal filed in this Court, Appellant raises nine penalty-phase issues, challenging the trial court's finding of aggravating circumstances, the trial court's failure to find mitigating circumstances, the weighing process the trial court employed in evaluating the aggravating and mitigating circumstances, and a challenge to the death sentence on the ground that it was based on arbitrary factors.[7]

## I. Sufficiency of the Evidence of First Degree Murder Convictions

■ Before addressing Appellant's contentions, we consider, as we must in all capital cases, whether the evidence is sufficient to support the convictions of first degree murder. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982). *See also Commonwealth v. Ballard*, 622 Pa. 177, 80 A.3d 380, 390 (2013) (examining whether the evidence was sufficient to support the defendant's conviction of first degree murder where the defendant had pled guilty to that offense); *Commonwealth v. Flor*, 606 Pa. 384, 998 A.2d 606, 615 (2010) (same); *Commonwealth v. Fears*, 575 Pa. 281, 836 A.2d 52, 58 (2003) (same). Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Sanchez*, 614 Pa. 1, 36 A.3d 24, 37 (2011).

■ "In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Fears*, 836 A.2d at 58–59. The Commonwealth may sustain this burden by means of

7. The issues set forth *infra* have been reordered for the sake of clarity.

wholly circumstantial evidence. *Commonwealth v. Montalvo,* 598 Pa. 263, 956 A.2d 926, 932 (2008).

■■ To obtain a conviction of first degree murder, the Commonwealth must prove that a human being was unlawfully killed, that the defendant perpetrated the killing, and that the defendant acted with malice and a specific intent to kill. *Commonwealth v. Kennedy,* 598 Pa. 621, 959 A.2d 916, 920 (2008). Section 2502 of the Crimes Code defines murder of the first degree as an "intentional killing," 18 Pa.C.S. § 2502(a), which, in turn, is defined as a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." *Id.* at § 2502(d). It is well-settled that specific intent to kill can be established through circumstantial evidence such as the use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997, 1009 (2007).

■ It is clear that the evidence, as set forth above and as developed during the suppression hearing, guilty plea proceeding, and penalty hearing, is sufficient to support Appellant's two convictions of first degree murder. Appellant accepted responsibility for the two murders and repeatedly acknowledged that he fatally shot Guadalupe and Woodson. At the guilty plea proceeding, the Commonwealth presented the testimony of Detective Randy Morris, Detective David Michael Kemmerer, and Corporal Kurt Tempinski, who relayed in thorough detail the circumstances of the shootings, and referenced the several eyewitnesses who observed Appellant murder Guadalupe and Woodson, as well as the statements Appellant gave to police. The Commonwealth further admitted into evidence the murder weapon and ammunition, the victims' autopsy reports, the audio recording and written note made by Appellant explaining his conduct on the day of the murders, and the Simon & Schuster surveillance video. Accordingly, we conclude there is sufficient evidence establishing that Appellant fatally shot both victims in a vital part of their bodies with malice and with the specific intent to kill.

## II. Challenges to Aggravating Circumstances[8]

### A. "Multiple Murder" Aggravating Circumstance

■ Appellant argues that the trial court erred in finding the Section 9711(d)(11) aggravating circumstance in relation to his conviction for Guadalupe's murder because he committed that offense first, before he murdered Woodson, and he had no prior murder convictions.[9] As noted, this aggravating circumstance applies where the defendant "has been convicted of another murder committed in any jurisdiction and committed either before or at the time of the offense at issue," 42 Pa.C.S. § 9711(d)(11). Appellant acknowledges there is precedent supporting the trial court's finding of the Section 9711(d)(11) aggravator for each murder conviction where more than one killing occurred during a single criminal episode, as occurred in the instant case. Appellant advocates, however, that we stray from our prior holdings, strictly construe the language of Section 9711(d)(11) so as not to apply the aggravator to the first killing committed, and vacate his death sentence for the Guadalupe murder.

The Commonwealth responds that the trial court properly found the Section 9711(d)(11) aggravating circumstance for Appellant's conviction of Guadalupe's murder. It argues that this Court has repeatedly upheld that aggravating circumstance relating to each murder conviction where, as here, the multiple killings were executed within a short period of time during the same criminal episode. The Commonwealth reiterates that Appellant began shooting at Guadalupe in the Simon & Schuster parking lot at 3:31 p.m., and that he shot Woodson at 3:35 p.m. As both murders occurred at the same general location within a span of less than four minutes, the Commonwealth concludes there is overwhelming evidence to demonstrate that the murder of Guadalupe occurred "at the time" that Appellant committed the murder of Woodson.

8. Part II of this Opinion addresses Issues G, H, and F, respectively, as set forth in Appellant's brief.

9. The Section 9711(d)(11) aggravating circumstance was the only aggravating circumstance found by the trial court relating to Appellant's conviction for Guadalupe's murder.

Moreover, the Commonwealth emphasizes, Appellant acknowledged during the guilty plea hearing that by pleading guilty to two counts of first degree murder, he was admitting that this aggravating factor was present. *See* N.T., Apr. 15, 2009, at 3–4 (where Appellant indicates that he understands that the Commonwealth established by virtue of the evidence and his guilty plea that the Section 9711(d)(11) aggravator has already been established).

The trial court agreed with the Commonwealth, recognizing that this Court has consistently held that the Section 9711(d)(11) aggravator applies to each murder conviction where more than one murder is committed during the same criminal episode. The trial court found that the Commonwealth established this aggravator beyond a reasonable doubt because "both murders took place during the same shooting rampage by [Appellant], with the same gun, at the same location, in the parking lot of the Simon and Schuster warehouse, and within less than four minutes of each other." Trial Court Opinion, dated Jun. 29, 2012 ("Tr. Ct. Op."), at 28–29. Like the Commonwealth, the trial court further emphasized that Appellant agreed that the Section 9711(d)(11) aggravating circumstance had been satisfied at his guilty plea hearing.

The trial court's analysis is correct. The plain language of Section 9711(d)(11) indicates that the multiple murder aggravator applies where the defendant has been convicted of another murder that was committed either "before" the offense at issue or "at the time of the offense at issue." 42 Pa.C.S. § 9711(d)(11). Thus, the relevant statutory inquiry focuses on when the "other murder" was committed, and not when the defendant was convicted of the "other murder," as suggested by Appellant.

Here, as cogently noted by the Commonwealth and the trial court, the record establishes that the murders of Guadalupe and Woodson were committed during the same criminal episode and within a time span of four minutes. Accordingly, we hold that the Guadalupe murder was committed "at the time" of the Woodson murder for purposes of Section 9711(d)(11), and the multiple murder aggravator clearly applies to both

first degree murder convictions. This holding is consistent with well-established case law of this Court. *See Commonwealth v. Ballard,* 622 Pa. 177, 80 A.3d 380, 414 (2013) (upholding the Section 9711(d)(11) aggravating circumstance for each of four first degree murder convictions where the defendant fatally stabbed four individuals in their home); *Commonwealth v. Baumhammers,* 599 Pa. 1, 960 A.2d 59, 99 (2008) (upholding the Section 9711(d)(11) aggravator for each of five first degree murder convictions where the defendant shot the five victims during a two-hour shooting rampage at different places of business and synagogues located within one to two miles of each other); *Commonwealth v. Edwards,* 588 Pa. 151, 903 A.2d 1139, 1164 (2006) (upholding the Section 9711(d)(11) aggravator for each of three first degree murder convictions where the defendant shot three victims in various rooms of a mobile home); *Commonwealth v. Taylor,* 583 Pa. 170, 876 A.2d 916, 938 (2005) (upholding the Section 9711(d)(11) aggravator for each of three first degree murder convictions where the defendant fatally shot three people at an apartment complex, a Burger King restaurant, and a nearby McDonald's restaurant); *Commonwealth v. May,* 584 Pa. 640, 887 A.2d 750, 766–67 (2005) (upholding the Section 9711(d)(11) aggravator for each of two murder convictions where the defendant killed a husband and wife in their home); *Commonwealth v. Saranchak,* 544 Pa. 158, 675 A.2d 268, 278 (1996) (upholding the Section 9711(d)(11) aggravating circumstance for each of two murder convictions where the defendant killed his mother and uncle in their home). *See also Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288, 299–300 (1983) (holding that the term "convicted" in the Section 9711(d)(10) aggravating circumstance, applying where the defendant has been convicted of another offense for which a life sentence or death was imposable, meant a determination of guilt, as opposed to final imposition of sentence, because the legislature included offenses committed contemporaneously with the offense at issue). Appellant offers no reason for this Court to decline to apply such well-settled law to the facts presented. Thus, we conclude he is not entitled to relief.

### B. "Grave Risk" Aggravating Circumstance

Appellant argues there was insufficient evidence to support the trial court's finding of the Section 9711(d)(7) grave risk aggravating circumstance. As noted, this aggravating circumstance applies where the defendant "knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S. § 9711(d)(7). The trial court relied on the following facts in support of the grave risk aggravator: that Appellant shot Woodson as he ran onto the loading dock where other employees were standing, particularly Vanessa Gonzalez; that the gun and ammunition that Appellant used during the shootings had the capacity to kill individuals who were one hundred yards away; that the ballistics evidence demonstrated that a bullet hitting Woodson's soft tissue could have passed through him and caused serious injury or death to others in the vicinity; and, that Appellant was aware of the presence of individuals on the loading dock at that time.

Appellant argues that the facts cited by the trial court in support of the grave risk aggravator are not supported by the record. Specifically, Appellant refutes the trial court's findings that Gonzales was standing on the loading dock platform when Woodson was fatally shot, and that the bullet could have passed through Woodson and caused serious injury or death to others. To the contrary, he submits that Gonzales was standing in the door frame leading to the loading dock, and that the bullet fired did not have the capacity to harm individuals other than Woodson. Finally, Appellant contends that the trial court erred in relying upon his knowledge of warehouse employee shifts, and by concluding that he "knowingly" created a grave risk of death to others, considering that the trial court likewise found that Appellant was under the influence of extreme mental or emotional disturbance at the time of the shooting.

The Commonwealth refutes Appellant's contention that the trial court misapprehended the facts supporting the grave risk of death aggravator. It argues that the trial court clearly understood that Gonzalez was originally on the loading dock,

492

had gone inside the building, and was standing in the doorway of the loading dock when she saw Appellant point the gun in her direction and fire his weapon at Woodson. *See* Tr. Ct. Op., at 9 (stating that "Gonzalez was standing in the doorway on the loading dock when Woodson was shot," and "Gonzalez stated that a group of employees were standing in the doorway"). The Commonwealth concludes that these facts clearly support a finding that Gonzalez and other employees were placed in jeopardy of suffering physical injury or death from Appellant's shooting of Woodson. It further notes that the trial court properly considered that Appellant knew the operating procedures at the warehouse, and was aware that many employees would be in the exact location of his rampage at the precise time he began shooting.

 We agree that sufficient evidence supports the grave risk aggravator. "Sufficient evidence to support the application of the aggravating circumstance of creating a grave risk of harm to persons other than the murder victim has been found by this Court in those circumstances where the other persons are 'in close proximity' to the decedent 'at the time' of the murder, and due to that proximity are in jeopardy of suffering real harm." *Commonwealth v. Paolello*, 542 Pa. 47, 665 A.2d 439, 456 (1995). Sufficient evidence exists only where there is a nexus "connecting the 'other persons' to the zone of danger created by the defendant's actions in killing the victim." *Id.* at 457. Further, "a jury can infer that a defendant is 'knowingly' endangering a person for purposes of Section 9711(d)(7) when the defendant uses a gun in any area where he knows that others could be." *Commonwealth v. Watson*, 523 Pa. 51, 565 A.2d 132, 140 (1989).

Here, the record amply supports the trial court's finding that Gonzalez was standing in the doorway of the loading dock behind Woodson, along with other employees, at the time Appellant fatally shot Woodson. *See* N.T., Apr. 14, 2009, at 84–5 (referencing Detective Michael Kemmerer's testimony that Gonzalez and other employees were standing in the industrial doorway of the loading dock when Woodson was shot as he climbed to the top step to the loading dock).

Further, the evidence demonstrated that Appellant was firing at Woodson from a distance of twenty-nine yards away, placing in danger those individuals who were in close proximity to Woodson at the time of the murder. *Id.* at 148–49 (referencing the testimony of Corporal Kurt Tempinski, an expert in ballistics and firearms, who stated that Appellant was twenty-nine yards away from the loading dock when he fired the fatal shot at Woodson, that it would be difficult to hit a moving target from that distance, and that individuals standing on the loading dock would not be safe). Accordingly, the evidence is clearly sufficient to demonstrate that Appellant knowingly created a grave risk of death to another person in addition to the victim of the offense, and Appellant's challenge to the sufficiency of the evidence supporting the Section 9711(d)(7) aggravator fails.

## C. Constitutional Challenge to Aggravating Circumstances

Appellant next contends that the multiple murder and grave risk aggravating circumstances are unconstitutional as applied to him in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 6, 9, and 13 of the Pennsylvania Constitution because the trial court, as fact finder, did not execute its function to determine whether the aggravators were supported by the facts, but rather automatically found the aggravators based on his guilty pleas.[10, 11] He relies on case law standing for the general proposition that a jury cannot be

10. Appellant's statement of his issue suggests that he is also presenting a facial challenge to Sections 9711(d)(11) and (d)(7) based on vagueness and overbreadth. *See* Brief for Appellant at 61. Appellant's sole argument in support of this issue, however, relates to an "as applied" challenge, *i.e.*, that the trial court improperly found the aggravating factors based exclusively on Appellant's guilty pleas. Accordingly, we conclude that Appellant has waived any facial challenge to Sections 9711(d)(7) and (d)(11) because he offers no argument in support thereof. *See Commonwealth v. Puksar*, 597 Pa. 240, 951 A.2d 267, 293–94 (2008) (deeming a claim waived for lack of development).

11. Appellant does not relate his claim to the text of any of the aforementioned constitutional provisions or any relevant case law involving those constitutional provisions.

directed to find a particular aggravating circumstance or render a verdict of death, but rather must be given discretion to determine whether each aggravating circumstance is appropriate under the facts presented. *See* Brief for Appellant at 61–62 (citing *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704 (1992); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)).

Appellant argues that the trial court did not examine the Commonwealth's evidence and exercise discretion in finding the multiple murder aggravating circumstance, but rather automatically concluded that the aggravator existed based on Appellant's guilty pleas to two counts of first degree murder. *See* Tr. Ct. Op., at 25–6 (noting, "after [Appellant] pled guilty to the two murders that he committed during this single criminal episode, and before the penalty phase hearing began, he agreed that the Commonwealth had established this factor beyond a reasonable doubt"); *id.* at 26 n.6 (stating that "[b]y stipulating to an aggravating circumstance, effectively declares that the Commonwealth has proved such aggravator beyond a reasonable doubt"). He further maintains that application of the grave risk aggravator was likewise unconstitutional as applied to him because the trial court determined that his guilty plea to recklessly endangering another person *per se* established this aggravating circumstance.

In response, the Commonwealth argues that the record refutes Appellant's contentions because the trial court acknowledged expressly that Appellant's guilty pleas did not require the finding of any aggravating circumstance. Relating to the multiple murder aggravating factor, the Commonwealth submits that the trial court exercised its discretion, examined the facts underlying both the Guadalupe and Woodson murders, and concluded that those facts supported the finding of that aggravator as to both counts of first degree murder. Concerning the grave risk aggravator, the Commonwealth asserts that the trial court extensively reviewed the evidence, which demonstrated that Appellant's shooting of Woodson knowingly created a grave risk of death to Gonzalez and the other employees standing near Woodson on the loading dock

at the time of the murder. The Commonwealth concludes that Appellant's "as applied" challenges to Sections 9711(d)(11) and (d)(7) are, therefore, meritless.

The trial court rejected Appellant's constitutional challenges based on its finding that the Commonwealth proved the multiple murder and grave risk aggravating circumstances beyond a reasonable doubt by evidence that Appellant willfully, deliberately, and intentionally murdered Guadalupe and Woodson during the same criminal episode, and that Appellant knowingly created a grave risk of death to Gonzalez during his homicidal rampage.

We agree with the Commonwealth that the record belies Appellant's claims. The trial court did not abrogate its duty, as fact finder, to examine the evidence presented by the Commonwealth during the penalty phase of trial and determine which aggravating circumstances were proven beyond a reasonable doubt. While the trial court acknowledged that Appellant admitted the existence of the multiple murder aggravator, as noted *supra* in the discussion of Issue II(A), the trial court engaged in a thorough analysis of the facts and relevant law to determine whether sufficient evidence supported that aggravating circumstance.

Relating to the grave risk aggravator, the trial court noted expressly that it was not relying on Appellant's guilty plea to the crime of recklessly endangering another person, but rather, as noted *supra* in the discussion of Issue II(B), based its finding of the aggravator on the evidence presented by the Commonwealth demonstrating that Appellant placed Gonzalez in grave risk of death when he fatally shot Woodson. *See* N.T., Apr. 13, 2009, at 55 (acknowledging that Appellant's guilty plea to recklessly endangering another person "does not arise [sic] to admitting the [grave risk] aggravating factor, but it is an admission that the weapon was fired such that it put others in danger of serious bodily injury."); *see also* Tr. Ct. Op., at 33 (holding that despite Appellant's guilty plea to recklessly endangering another person, there was insufficient evidence of the grave risk aggravating circumstance as to the residents in the retirement home near the warehouse or the

driver or passengers of the SEPTA bus). Accordingly, Appellant is not entitled to relief on this claim.[12]

## III. Challenges to the Weight of the Evidence[13]

■ Appellant raises three distinct challenges to the weight of the evidence supporting the death verdicts, which we have consolidated for review. First, Appellant argues that the death verdicts are against the weight of the evidence because the trial court, as fact finder, failed to find the mitigating circumstance set forth at Section 9711(e)(3) (that Appellant's "capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired"). He argues that he proved this mitigating circumstance through the testimony of expert forensic psychiatrists, Dr. Kenneth J. Weiss and Dr. Frank M. Dattilio, who both opined that Appellant's capacity to appreciate the criminality of his conduct and his ability to conform his conduct to the requirements of law were substantially impaired.

Dr. Weiss testified that Appellant suffered from schizophrenia, paranoid type, as early as 1995, and opined that Appellant's mental impairment prevented him from having any cogent plan to kill a particular individual. Dr. Dattilio explained how Appellant's drug usage in early adulthood aggravated his tendency for mental illness, and described Appellant as delusional and psychotic with a history of failed relationships, sporadic employment, and difficulty with finances and family. Dr. Dattilio also believed that Appellant did not appreciate the severity of his actions until he saw blood on the ground and realized what he had done. Appellant emphasizes

12. In a separate issue in his appellate brief (Issue I), Appellant contends that the verdict was not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances. *See* Brief for Appellant at 76. To the extent this claim is a challenge to the sufficiency of the evidence supporting the aggravating circumstances found by the trial court, it is meritless for the reasons set forth in the discussion of Issues II(A) and (B). To the extent that this claim challenges the weight of the evidence supporting the death verdicts, it is discussed, *infra*, at Issue III of this opinion.

13. Part III of this Opinion addresses Issues A, B, C, and D, as set forth in Appellant's brief.

that while the Commonwealth cross-examined his mental health experts, it did not present an expert of its own to refute his claim of lack of capacity to appreciate the criminality of his conduct.

Second, Appellant argues that the death verdicts are against the weight of the evidence because the trial court, as fact finder, failed to find the following "unrebutted" mitigating evidence in support of the Section 9711(e)(8) catchall mitigating circumstance: Appellant's chaotic and unstable childhood (including the death of his father when he was a young child, the bullying and isolation he suffered in school, and the physical abuse he suffered at the hands of his uncle); his struggle with alcohol and illegal drugs and unsuccessful attempts at rehabilitation; and his mental illness referenced, *supra*. Appellant acknowledges that the trial court found the catchall mitigating circumstance relating to both the Guadalupe and Woodson murders. He contends, however, that the trial court listed only Appellant's guilty plea and waiver of defenses in support of the Section 9711(e)(8) mitigator, N.T., Apr. 17, 2009, at 5, and failed to give proper weight to the aforementioned life-history mitigation evidence.

In support of these two weight of the evidence challenges, Appellant relies on *Eddings v. Oklahoma,* 455 U.S. 104, 114–15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), where the High Court held that "[t]he sentencer ... may determine the weight to be given relevant mitigating evidence. But [it] may not give it no weight by excluding such evidence from [its] consideration." From this, Appellant essentially suggests that the trial court was required to credit his mental health and life history mitigation evidence, and to conclude that the Section 9711(e)(3) and (e)(8) mitigating circumstances were satisfied by a preponderance of the evidence.[14]

14. In Issue D of his appellate brief, Appellant suggests that the trial court's failure to find the Section 9711(e)(3) and (e)(8) mitigating circumstances violated this Court's holding in *Commonwealth v. Rizzuto,* 566 Pa. 40, 777 A.2d 1069 (2001), which held that where a jury fails to find a stipulated mitigating circumstance, an arbitrary element is injected into the sentencing process. Appellant's reliance on *Rizzuto,* however, is misplaced and his claim fails because the Commonwealth

Third, Appellant contends that the trial court improperly weighed the aggravating and mitigating circumstances and erroneously concluded that the aggravating factors outweighed the mitigating factors. He harkens back to his prior argument that the trial court failed to consider his mental health and life history mitigation evidence, and concludes, as a result, that the trial court's verdicts of death shock one's sense of justice.

The Commonwealth responds to all of Appellant's weight of the evidence challenges in the aggregate by contending that a fact finder in a capital case is not required to find each mitigating circumstance for which the defense presented evidence, but rather has the discretion to believe all, part, or none of the evidence presented. It argues that while the fact finder must consider mitigating factors and lend weight to them, as the High Court held in *Eddings*, it need not conclude that the mitigation evidence rose to the level of constituting a statutory mitigating circumstance. To do so, the Commonwealth asserts, would permit Appellant to invade the fact finder's exclusive province of evaluating the evidence. Here, the Commonwealth contends, the trial court considered Appellant's evidence of lack of capacity to appreciate the criminality of his conduct, as well as the evidence of his troubled life history, and exercised its discretion to conclude that such evidence did not mitigate Appellant's fatal shooting of two innocent Simon & Schuster employees.

The Commonwealth emphasizes that the trial court credited Appellant's mental health evidence to the extent that it established that he was under the influence of extreme mental or emotional disturbance pursuant to the Section 9711(e)(2) mitigator, and also found that Appellant established other evidence of mitigation under Section 9711(e)(8) by accepting responsibility for his actions and pleading guilty to the criminal offenses charged. It submits that the trial court also acted within its discretion by rejecting the mental health evidence supporting the Section 9711(e)(3) mitigator. The

did not stipulate to the existence of the Section 9711(e)(3) or (e)(8) mitigating circumstances.

Commonwealth asserts that it thoroughly cross-examined the mental health experts' opinions that Appellant did not have the ability to understand the criminality of his conduct by: outlining the steps that Appellant took to complete the crime, including his written and oral will and testament, which disclosed his desire to seek vengeance against the Simon & Schuster employees who, he believed, mistreated him in the past; highlighting Appellant's ability to distinguish between individuals and take the lives of only those employees that he believed may have wronged him; and pointing out that Appellant acted in a calm manner, and conformed himself to the requisites of the law when it benefited him to do so. Finally, the Commonwealth maintains that the trial court also acted within its discretion as fact finder by concluding that the evidence of Appellant's troubled life history did not serve to mitigate the murders, as there was no connection between Appellant's upbringing and his criminal acts on the day of the fatal shootings. The trial court agreed with the Commonwealth on all relevant legal points, and engaged in a thorough and well-reasoned analysis detailing its reasons for rejecting each item of mitigation evidence at issue. *See* Tr. Ct. Op., at 33–46.

The trial court properly denied Appellant relief on his challenges to the weight of the evidence supporting his death verdicts. "[M]itigating circumstances must be proved by the defendant by a preponderance of the evidence." 42 Pa.C.S. § 9711(c)(1)(ii). "[T]he verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance ... and no mitigating circumstances or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." *Id.*, § 9711(c)(1)(iv).

Regarding Appellant's contention that the trial court failed to give sufficient weight to his mental health and life history mitigation evidence, this Court has consistently rejected such claim. In *Commonwealth v. Flor*, 606 Pa. 384, 998 A.2d 606 (2010), the capital defendant argued on direct appeal that he presented "unrebutted" life history and mental health mitiga-

tion evidence, but that the jury failed to consider that evidence and/or did not weigh the evidence properly when it concluded that there were no mitigating circumstances.[15] *Id.* at 626. Rejecting this contention, we stated:

> As this Court has expressly articulated, "[a] capital jury is not required to find a mitigating factor presented by a defendant, even if the Commonwealth fails to present evidence rebutting the existence of that factor." *Commonwealth v. Walter*, 600 Pa. 392, 966 A.2d 560, 568 (Pa.2009). In more general terms, the fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder. *Commonwealth v. Treiber*, 582 Pa. 646, 874 A.2d 26, 30 (Pa.2005); *Commonwealth v. Williams*, 578 Pa. 504, 854 A.2d 440, 445 (Pa.2004). It follows directly from the above principles that a jury is not obliged to believe testimony, including expert medical or psychiatric testimony, offered by a defendant. *See Commonwealth v. VanDivner*, 599 Pa. 617, 962 A.2d 1170, 1177 (Pa.2009); *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929, 939 (Pa.1990). Furthermore, the weight to be ascribed to any testimony is a determination that rests exclusively with the finder-of-fact. *Treiber, supra* at 30; *Williams, supra* at 445.

*Flor*, 998 at 626.

Our Court in *Flor* explained that "an appellate court cannot substitute its judgment for that of the fact-finder." *Id.* (citing *Treiber*, 874 A.2d at 30–31) (holding that "[i]t is axiomatic that once a jury has been properly instructed on the nature of aggravating and mitigating circumstances as defined in the statute, as well as on the statutory scheme for balancing one against the other, it is not for reviewing courts to usurp the jury function and to substitute their judgment for that of the jury"). Accordingly, Appellant's claim that the trial court erred by failing to give proper weight to his life history and mental health mitigation evidence is meritless.

15. The jury in *Flor* had found four aggravating circumstances, and, thereby, rendered a verdict of death.

This Court has also rejected claims that a particular death sentence was against the weight of the evidence because the jury improperly weighed the aggravating and mitigating circumstances to reach a verdict of death. In *Commonwealth v. Ballard*, 622 Pa. 177, 80 A.3d 380, 411–12 (2013), we reaffirmed that the weighing process is exclusively a question for the fact finder and that this Court "may not reverse a death penalty on weight of the evidence grounds." *Id.* at 412 (citing *Commonwealth v. Reyes*, 600 Pa. 45, 963 A.2d 436, 441–2 (2009)). In *Reyes*, we held that there is no mechanism by which a sentence of death may be reversed by this Court on the basis of an improper weighing of aggravating and mitigating circumstances because our authority to vacate a sentence is prescribed by 42 Pa.C.S. § 9711(h)(3), which requires us to affirm the sentence of death unless: "(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d)." *Id.*

We held that "[t]his restriction on our authority has caused this Court to reiterate many times that it is exclusively the function of the jury in the first instance to decide whether aggravating and mitigating circumstances exist and then whether the aggravating circumstances outweigh any mitigating circumstances." *Reyes*, 963 A.2d at 441. "Because we are an appellate court, we are not at all suited to the task of weighing evidence. We do not have the ability to observe the demeanor of witnesses; that is why the review of traditional weight claims is a deferential one, limited to determining if the trial court abused its discretion." *Ballard*, 80 A.3d at 412. Accordingly, Appellant's third challenge to the weight of the evidence fails.

### IV. Passion, Prejudice and Arbitrariness Review[16]

As noted, this Court is required to conduct an independent penalty review pursuant to 42 Pa.C.S. § 9711(h)(3), which

---

[16]. Part IV of this Opinion addresses Issue E as set forth in Appellant's brief.

provides that "[t]he Supreme Court shall affirm the sentence of death unless it determines that: (i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d)."

■ Before we fulfill our statutory obligation in this regard, we must address the specific allegations that Appellant raises under Section 9711(h)(3)(i). We acknowledge that Appellant included in his supplemental Pa.R.A.P. 1925(b) statement of matters complained of on appeal the general claim that his sentence of death was the product of passion, prejudice or any other arbitrary factor. In his appellate brief to this Court, however, he expands this general claim into four particular claims of trial court error, which, according to Appellant, rendered his verdict of death arbitrary. Specifically, Appellant alleges that: (1) the trial court improperly based its verdict of death solely on the facts underlying his conviction and ignored evidence of mitigation; (2) the trial court improperly considered Appellant's lack of remorse as a nonstatutory aggravating circumstance; (3) the trial court erred by admitting during the penalty hearing improper victim impact evidence in the form of the statement by the driver of the SEPTA bus; and, (4) the trial court erred by failing to find the Section 9711(e)(1) mitigating factor (no significant history of prior criminal convictions) relating to Appellant's conviction for murdering Woodson.

The Commonwealth asserts that by failing to raise these particular claims of trial court error in his Rule 1925(b) statement of matters complained of on appeal, Appellant has deprived the trial court of the opportunity to address the issues. As such, the Commonwealth advocates that we deem the issues waived, and decline to address them under the guise of this Court's statutory review pursuant to Section 9711(h)(3)(i).

We agree. Appellant did not include the four claims of trial court error enumerated above in his 1925(b) statement of

matters complained of on appeal, and, thus, they are waived. *See Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775, 780 (2005) (citing *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998)) (holding that "[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived"); *see also Commonwealth v. Wholaver*, 588 Pa. 218, 903 A.2d 1178, 1183–84 (2006) (deeming waived issues in a capital appeal where the defendant did not file a timely statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)).

Appellant's attempt to avoid waiver of the four claims of trial court error by contending that they rendered his sentence of death arbitrary under Section 9711(h)(3)(i) is not persuasive, as this Court has repeatedly declined to address defaulted penalty phase claims under the rubric of statutory review for arbitrary factors. *See Commonwealth v. Padilla*, 622 Pa. 449, 80 A.3d 1238, 1272 (2013) (declining to invoke this Court's Section 9711(h)(3)(i) statutory review of death sentences to address the defendant's challenge to an aggravating circumstance to which the defendant had stipulated at trial because the issue was waived and could only be pursued on collateral review as an ineffective assistance of counsel claim); [17] *Commonwealth v. May*, 612 Pa. 505, 31 A.3d 668, 675 (2011) (refusing to invoke Section 9711(h)(3)(i) statutory review to address waived penalty phase claims alleging prosecutorial misconduct and erroneous jury instructions); *Commonwealth v. Laird*, 605 Pa. 137, 988 A.2d 618, 646 (2010) (declining to address under our Section 9711(h)(3)(i) statutory review a waived claim alleging an erroneous penalty phase jury instruction because to do so would "convert statutory review into a device for resurrecting a general rule of relaxed waiver, counter to *Commonwealth v. Freeman* [573 Pa. 532],

---

**17.** Three members of the Court dissented in *Padilla*, and opined that they would have addressed the defaulted penalty phase claim because it involved an indisputably flawed aggravating circumstance that had been injected into the jury's weighing determination, which undergirded the death verdict. *See* 80 A.3d at 1290 (Saylor, J., concurring and dissenting). Unlike in *Padilla*, the defaulted penalty phase issues Appellant seeks to have this Court address pursuant to our Section 9711(h)(3)(i) statutory review do not involve an indisputably flawed aggravating circumstance.

827 A.2d 385 (2003)"); *Commonwealth v. Chambers*, 602 Pa. 224, 980 A.2d 35, 58–59 (2009) (declining to review waived issues that derived from strategic decisions of the defendant's trial counsel under the guise of an "arbitrary fact" for the purposes of 42 Pa.C.S. § 9711(h)(3)'s statutory review). Consistent with this precedent, we dismiss the enumerated four penalty phase claims as waived, without prejudice to Appellant to pursue them as ineffective assistance of counsel claims under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–46.

Turning now to our statutory obligation under Section 9711(h)(3), and upon careful review of the record, we conclude that Appellant's two sentences of death were not the product of passion, prejudice or any other arbitrary factor, but rather were based on the overwhelming evidence establishing that Appellant fatally shot Angel Guadalupe and Reginald Woodson. Moreover, we have already concluded that the evidence supported the trial court's finding of the Section 9711(d)(11) aggravating circumstance (multiple murders) as it relates to both counts of first degree murder, and the Section 9711(d)(7) aggravating circumstance (grave risk) concerning the murder of Woodson. Accordingly, we hereby affirm Appellant's conviction and sentences of death.[18]

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, TODD, McCAFFERY and STEVENS join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I join the majority opinion, subject only to the reservation I expressed in *Commonwealth v. Ballard*, 622 Pa. 177, 80 A.3d 380 (2013), namely, that a wholesale disclaimer of the ability of an appellate court to weigh the evidence adduced in a capital sentencing proceeding is inconsistent with actual practice. *See id.* at 233–34, 80 A.3d at 414–15; *cf. Wiggins v. Smith*, 539 U.S. 510, 535, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003)

18. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).

(explaining that, in assessing prejudice resulting from deficient performance of capital penalty counsel, the appellate court "reweigh[s] the evidence in aggravation against the totality of the mitigating evidence").

Notably, in cases involving the imposition of the penalty of death, the General Assembly has invested this Court with the special responsibility of assuring that a capital sentence is not the result of passion, prejudice, or any other arbitrary factor. *See* 42 Pa.C.S. § 9711(h)(3). While I agree with the admonitions offered by various Justices in previous cases cautioning that arbitrariness review should not be accorded so broadly as to obviate requirements maintained to assure a developed record and orderly and appropriate decision-making, I also do not believe it should be administered so narrowly as to preclude a deferential, weight-based assessment as to whether the sentencing jury acted within the range of its specified authority.

I acknowledge that it would be a rare instance in which a weight-based claim would prevail under such a regime. Nevertheless, it is my considered position that the statutory review for arbitrariness serves as an essential safeguard against unwarranted imposition of the severest of punishments and that it should not be circumscribed by the sort of blanket proscription which is enforced here. I also maintain the concern with the underpinnings of the *per se* rule, in that I believe it is derived from an understatement of the competency of appellate courts to weigh evidence adduced in a capital sentencing proceeding.