J-S31006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYRELL LIENELL JONES | |
| Appellant | No. 829 EDA 2021 |

Appeal from the Judgment of Sentence imposed November 12, 2020
In the Court of Common Pleas of Monroe County
Criminal Division at No.: CP-45-CR-0002216-2019

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:               **FILED FEBRUARY 1, 2022**

Appellant, Tyrell Lienell Jones, appeals from the judgment of sentence imposed in the Court of Common Pleas of Monroe County on November 12, 2020, challenging the sufficiency of the evidence supporting his conviction of disorderly conduct.  Upon review, we affirm.

The trial court summarized the relevant background as follows.

On August 27, 2019, at approximately 9:48 a.m., Pennsylvania State Trooper Jonathan Marianelli observed a burgundy Jeep Grand Cherokee with no valid license plate traveling East on I 80 at mile marker 298.7.  The vehicle's back license plate bore a message that stated, "NOT FOR HIRE" "PRIVATE PROPERTY" and "PRIVATE NOT FOR COMMERCIAL USE PRIVATE MODE OF TRAVEL."  The trooper did not recognize this as an approved registration plate and initiated a traffic stop at I 80 East MM 298.8 in Pocono Township.  When the [t]ropper approached the vehicle[,] the operator refused to lower his front window to speak with the [t]rooper and was distracted with his cell phone.  The

---

[*] Retired Senior Judge assigned to the Superior Court.

operator eventually lowered his rear passenger window approximately an inch to speak through.

The operator related he was travelling and provided a Passport ID card and vehicle insurance card, but did not provide a vehicle registration or driver's license. Trooper Marianelli identified the operator as [Appellant], and a CLEAN/NCIC search revealed that [Appellant]'s license was suspended. Due to observed behaviors which indicated [Appellant] may be a sovereign citizen, Trooper Marianelli requested an additional unit to assist. The [t]rooper then prepared summary citations and requested a tow truck because the vehicle was on a limited access highway and [Appellant] had a suspended driver's license and no valid registration.

Trooper Marianelli requested [Appellant] exit his vehicle and to sit inside the tow truck which arrived at the scene. Despite this request, [Appellant] refused to exit his vehicle. [Appellant] then requested to speak to Trooper Marianelli's supervisor, Corporal Digregorio, who was already on scene. Corporal Digregorio addressed [Appellant] and related the same message as Trooper Marianelli. [Appellant] continued to refuse to exit the vehicle and Corporal Digregorio told [Appellant] that he had two minutes to comply or he was going to be taken to see a judge. [Appellant] continued to refuse to exit the vehicle and the police decided that he would need to be extracted. A patrol vehicle was placed into the right travel lane of I-80 east closing off the lane during a time of high traffic which caused a backup on the limited access highway. Trooper Marianelli then used a glass break tool to enter [Appellant]'s vehicle and unlock the door. [Appellant], still refusing to obey commands, was removed from his vehicle and placed under arrest.

[Appellant] was tried on November 12, 2020 in a non-jury trial. He was found guilty of disorderly conduct (M3) and sentenced to pay a fine of $2,500 and the cost of proceedings.

Trial Court Opinion, 4/9/21, at 1-3 (internal citations to record omitted).

Upon denial of his motion for judgment of acquittal, Appellant timely filed the instant appeal. On appeal, Appellant argues that the evidence is insufficient to support his conviction for disorderly conduct because the police

itself created the disturbance by unlawfully electing to tow Appellant's vehicle. We disagree.

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Murray***, 83 A.3d 137, 151 (Pa. 2013).

> When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Commonwealth v. Diamond***, 623 Pa. 475, 83 A.3d 119, 126 (2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

***Commonwealth v. Hill***, 210 A.3d 1104, 1112 (Pa. Super. 2019).

As relevant to this case, an individual commits the crime of disorderly conduct "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4).

Appellant argues that the Commonwealth failed to prove that Appellant's conduct created a hazardous condition and that his refusal to comply with the troopers' orders did not serve a legitimate purpose. **See** Appellant's Brief at 11-16. We disagree.

Appellant acknowledges that there was a hazardous or physically offensive condition. Indeed, the trial court noted that "both parties agree that the lane closure on I-80 constituted a physically hazardous condition." **See** Trial Court Opinion, 4/9/21, at 5 (citing N.T., 11/12/20, at 49, 51-52). Nonetheless, Appellant argues that the police created the condition, not he. Appellant's Brief at 11-12. As persuasively stated by the trial court, "*review of the trial record in a light most favorable to the Commonwealth* supports finding that the sole purpose of the lane closure was to remove [Appellant] from the vehicle. Simply put, the towing of the vehicle did not cause the lane closure. Rather, the sole cause of the lane closure was [Appellant]'s refusal to exit the vehicle." Trial Court Opinion, 4/9/21, at 5 (emphasis added). Accordingly, the record supports the trial court's finding that Appellant's conduct created a hazardous condition.

Appellant also argues that towing the vehicle was unlawful because the Commonwealth failed to provide any evidence that the troopers' decision to tow was based on public safety concerns. Appellant's Brief at 12 (relying on

- 4 -

J-S31006-21

***Commonwealth v. Lagenella***, 83 A.3d 94 (Pa. 2013))[1].  Appellant is not

contending that there were not public safety concerns (indeed, it is not

disputed that there were).  ***See*** Trial Court Opinion, 4/9/21, at 5 (citing N.T.,

11/12/20, at 49, 51-52).).  Appellant merely argues that the trooper, in his

testimony, failed to state that the decision to tow was based on public safety

concerns.  To this end, Appellant notes that ***Lagenella*** requires "the

assessment of safety concerns to be the explicit reason for the officer's

decision to tow, not an assessment of safety concerns by the [c]ourt after the

fact."  Appellant's Brief at 12-13.  The record does not support Appellant's

contention.

At trial, Trooper Marianelli testified as follows:

> Q: Now during the course of communicating with [Appellant] did you advise him of him not having a valid license, not having insurance - - the registration rather, not being registered properly and so forth?
>
> A: Yes.
>
> Q: And what did you advise him about that? As a result of that what did you have him do?

_____

[1] In ***Lagenella***, the police pulled over a motorist for failing to use a turn signal and then ascertained that his driver's license was suspended and that the vehicle did not have an emissions sticker.  Although the defendant said that he could call a friend to drive the vehicle home, the police refused and impounded the vehicle.  At the suppression hearing, the police testified that the vehicle was undamaged, it was legally parked at the curb, and that the vehicle neither posed a detriment to the flow of traffic nor created a safety hazard.  The Supreme Court found that the Commonwealth had failed to produce any evidence that would allow the police to impound the vehicle.

A: As a result of an unregistered and unlicensed vehicle being on a limited access highway I advised him that the vehicle needed to be removed by a tow.

Q: By a what?

A: By a tow truck.

Q: By a tow truck, okay. And then what was his response?

A: Basically no response. He didn't - -

N.T. Trial, 11/12/20, at 11-12.

Thus, in light of the foregoing, the record belies Appellant's argument.

We also agree with the trial court that Appellant's reliance on **Lagenella** is misplaced. It is clear that pursuant to **Lagenella**, the police could have towed Appellant's car if it was "impeding the flow of traffic" or "parked illegally on the street." **Lagenella**, 83 A.3d at 102. Here, Appellant's vehicle was "immobilized on the shoulder of I-80, a limited access highway, during a time of high traffic," **see** Trial Court Opinion, 4/9/21, at 8. Since standing or parking a vehicle on a limited access highway is prohibited, **see** 75 Pa.C.S.A. § 3353(a)(2)(vii), under **Lagenella**, the troopers properly towed Appellant's vehicle.

Finally, Appellant argues that "Appellant was pursuing a legitimate purpose by remaining in the car." Appellant's Brief at 14. Specifically, Appellant explains his claim as follows:

Per the statute, police should have immobilized the car and not towed it. [75 Pa.C.S.A. § 6309.2(b)][2] then provides a procedure to satisfy conditions before a magistrate to allow the car's release and towing without being impounded. The Appellant, if left alone with his traffic tickets as he would properly have been, could have lawfully pursued the towing of the vehicle in accordance with the statute.

Appellant's Brief at 14.

_____

[2] Section 6309.2(b) reads as follows:

**(b) Procedure upon immobilization.—**

(1) When a vehicle is immobilized pursuant to subsection (a)(1), the operator of the vehicle may appear before the appropriate judicial authority within 24 hours from the time the vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:
> (i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and
> (ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 (relating to judiciary and judicial procedure) and this title.

(2) When a vehicle is immobilized pursuant to subsection (a)(2), the owner of the vehicle may appear before the appropriate judicial authority within 24 hours from the time the vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:
> (i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and
> (ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 and this title.

(3) If a certification of release is not obtained within 24 hours from the time the vehicle was immobilized, the vehicle shall be towed and stored by the appropriate towing and storage agent under subsection (c).

Appellant, however, neglects to mention that, under Section 6309.2(a), the procedure mentioned under subsection 6309.2(b) is applicable ***unless*** "***in the interest of public safety***, [the law enforcement officer] direct[s] that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c)." 75 Pa.C.S.A. § 6309.2(a)[3] (emphasis added).

---

[3] Section 6309.2(a) reads as follows:

**(a) General rule.**--Subject to subsection (d) [which it is not relevant for our discussion], the following shall apply:

(1) If a person operates a motor vehicle or combination on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle or combination or, **in the interest of public safety**, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

(2) If a motor vehicle or combination for which there is no valid registration or for which the registration is suspended, as verified by an appropriate law enforcement officer, is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle or combination or, **in the interest of public safety**, direct that the vehicle be towed and stored by the appropriate towing and storing agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

75 Pa.C.S.A. § 6309.2(a)(emphasis added).

Here, it is undisputed that the vehicle was parked on a limited access highway, jeopardizing public safety, which justified the immediate towing of Appellant's vehicle.[4] ***See also*** Trial Court Opinion, 4/9/21, at 8-9. Thus, we agree with the trial court that "this safety concern afforded police the authority to tow [Appellant's] vehicle under 75 Pa.C.S.A. § 6309." ***Id.*** at 9.[5]

Because Appellant's challenges to the sufficiency of the evidence are without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

_____

[4] The United States Supreme Court in ***South Dakota v. Opperman***, 428 U.S. 364 (1976) addressed the "in the interest of public safety" concept as follows:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," ***Cady v. Dombrowski***, [413 U.S. 433, 441 (1973)], automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. *Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.*

***Id***. at 368-69 (footnote omitted) (emphasis added).

[5] The trial court also noted that Appellant "admitted that the location of his vehicle did pose a public safety concern during oral argument at trial and in the Motion for Judgment of Acquittal." Trial Court Opinion, 4/9/21, at 8 (citing N.T., 11/12/20, at 51).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/2022