J-A20020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALONZO ELLISON | |
| Appellant | No. 2564 EDA 2012 |

Appeal from the Judgment of Sentence July 25, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006872-2009

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                    **FILED SEPTEMBER 23, 2014**

Appellant, Alonzo Ellison, appeals from the July 25, 2012 judgment of sentence of life without the possibility of parole after a jury found him and his co-defendants, Mikechel Brooker and Ferock Smith[1], guilty of murder in the first degree, criminal conspiracy, firearms not to be carried without a license, and possession of an instrument of a crime (PIC).[2]   After careful review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows.

_____

[1] Brooker's appeal is currently pending in this Court at 96 EDA 2013, and Smith's appeal is currently pending in this Court at 188 EDA 2013.

[2] 18 Pa.C.S.A. §§ 2502(a), 903(a)(1), 6106(a)(1), and 907(a), respectively.

On July 18, 2008, Barry Jacobs, Jr. ("Jacobs") was shot and killed on the 8700 Block of Glenoch Place in Philadelphia, by [Appellant], Ferock Smith ("Smith") and [Mikechel] Brooker ("Brooker") in an apparent dispute over drug territory after Antoniette Gray ("Gray") refused to purchase drugs from [Appellant]. When Gray[,] shortly thereafter[,] purchased drugs from Jacobs, [Appellant], Smith, and Brooker shot Jacobs multiple times. At trial, Gray testified that she did not remember the shooting and her July 20, 2008[] statement to police was admitted. In her statement, Gray identified [Appellant], Smith, and Brooker as the three people who shot Jacobs. Gray also saw [Appellant], Smith, and Brooker the next day and heard them laughing about shooting Jacob[s]. Another eyewitness, Jeffrey Gould ("Gould"), testified that he saw someone standing over Jacobs and shoot him in the head. Gould had identified that person as [Appellant] in a July 18, 2008 statement to police, which was introduced at trial.

At trial, Eleanore Sampson ("Sampson") testified that she did not remember the events after the shooting and her July 19, 2008 statement to police was admitted. In her statement, Sampson stated that [Appellant], Smith, and Brooker came to her apartment on the night of July 18, 2008. Sampson stated that she let [Appellant], Smith, and Brooker use her apartment because they gave her drugs. [Appellant], Smith and Brooker had a conversation in Sampson's apartment that night, during which she heard Smith say he shot Jacobs. Smith and Brooker had handguns with them which they placed in Sampson's apartment. Sampson asked [Appellant] to remove the guns from her apartment and [Appellant] took a 9 millimeter handgun from Smith. Brooker and Smith left Sampson's apartment shortly thereafter, at which time, [Appellant] gave the 9 millimeter handgun back to Smith. [Appellant] stayed and slept at Sampson's apartment and was arrested leaving from the rear of the apartment when the police were knocking at the front door. A .32 caliber handgun

was found during a search of Sampson's apartment after [Appellant]'s arrest. …

Trial Court Opinion, 12/26/12, at 2-3.

On June 1, 2009, the Commonwealth filed an information charging Appellant with the above-mentioned offenses, as well as one count each of persons not to use a firearm and carrying firearms in public in Philadelphia.[3] On July 10, 2012, Appellant proceeded to a jury trial. At the conclusion of said trial, on July 16, 2012, the jury found Appellant guilty of first-degree murder, criminal conspiracy, firearms not to be possessed without a license, and PIC. The Commonwealth *nolle prossed* the remaining two charges. On July 25, 2012, the trial court imposed a sentence of life imprisonment without the possibility of parole as to first-degree murder. The trial court did not impose any further penalty on the remaining charges. On July 31, 2012, Appellant filed a timely post-sentence motion, arguing that the jury's verdict was against the weight of the evidence. **See generally** Pa.R.Crim.P. 607(A)(3). The trial court entered an order on August 6, 2012, denying Appellant's post-sentence motion. On August 23, 2012, Appellant filed a timely notice of appeal.[4]

On appeal, Appellant raises four issues for our review.

---

[3] 18 Pa.C.S.A. §§ 6105(a.1)(1) and 6108, respectively.

[4] Appellant and the trial court have complied with Pa.R.A.P. 1925.

I.      Is [Appellant] entitled to an arrest of judgment on all charges as the verdict is not supported by sufficient evidence?

II.     Is [Appellant] entitled to a new trial as the verdict is not supported by the greater weight of the evidence?

III.    Is [Appellant] entitled to a new trial as the result of [trial c]ourt error where the [trial c]ourt denied a mistrial request, even though the [Commonwealth] branded [Appellant] as a drug dealer, all to his untold and unfair prejudice?

IV.     Is [Appellant] entitled to a new trial as the result of prosecutorial misconduct during closing argument where the [Commonwealth] made a knowing and material misrepresentation as to the possession of a firearm allegedly used in this case?

Appellant's Brief at 3.

In Appellant's first issue, he challenges the sufficiency of the Commonwealth's case. Specifically, he avers the Commonwealth failed to provide sufficient evidence that Appellant was a principal, conspirator, or accomplice regarding first-degree murder. *Id.* at 14-15. Regarding his conspiracy conviction, Appellant also argues "[t]he evidence here does not establish an agreement between the parties." *Id.* at 17.[5]

_____

[5] We note that Appellant placed this argument in his second argument point pertaining to the weight of the evidence. Nevertheless, as he did raise this element in his Rule 1925(b) statement on sufficiency grounds, we will address it with the balance of his sufficiency argument.

Our standard of review regarding challenges to the sufficiency of the Commonwealth's case is well settled. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." ***Commonwealth v. Patterson***, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted) , *appeal denied*, --- A.3d ---, 1033 MAL 2013 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" ***Id.*** "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." ***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013) (citation omitted).

Appellant challenges the sufficiency of the Commonwealth's evidence regarding his conviction for murder in the first degree. The relevant statute provides as follows.

**§ 2502. Murder**

**(a) Murder of the first degree.--**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

…

**(d) Definitions.--**As used in this section the following words and phrases shall have the meanings given to them in this subsection:

…

**"Intentional killing."** Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.

…

**"Principal."** A person who is the actor or perpetrator of the crime.

18 Pa.C.S.A. § 2502. Furthermore, our Supreme Court has consistently stated when proving the sufficiency of the evidence for first degree murder, the Commonwealth's burden is as follows.

In order to sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. Specific intent and malice may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body.

- 6 -

*Commonwealth v. Arrington*, 86 A.3d 831, 840 (Pa. 2014) (internal citation omitted).

Additionally, Appellant challenges the sufficiency of the Commonwealth's evidence to support his conviction for criminal conspiracy. Appellant's Brief at 17. The criminal conspiracy statute provides as follows.

> **§ 903. Criminal conspiracy**
>
> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
> …
>
> **(e) Overt act.--**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.
>
> …

18 Pa.C.S.A. § 903. To sustain a criminal conspiracy conviction, "the Commonwealth must establish that "1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was

- 7 -

committed in furtherance of the conspiracy." ***Commonwealth v. Nypaver***, 69 A.3d 708, 715 (Pa. Super. 2013) (citation omitted).

After careful review of the certified record, we conclude that the Commonwealth presented sufficient evidence to sustain the convictions. In the case *sub judice*, the Commonwealth presented the testimony of Gray. Gray testified that she could not recall the events that transpired on the night of the shooting. N.T., 7/10/12, at 112-113. As a result, the Commonwealth admitted Gray's original witness statement to the police during Gray's testimony as substantive evidence. At the time of said statement, Gray told the police that she was only a few feet away from Jacobs when he was killed, and that she knew who killed him. ***Id.*** at 122. Recalling the events of July 18, 2008, Gray told the police that prior to the incident she had just bought a "dime bag" off of Jacobs. ***Id.*** at 123.[6] Gray told the police that shortly after that, a man named Worm "just pointed a gun at [Jacobs] and shot him [in the head], like, two or three times." ***Id.*** at 123, 124-125. She further testified that after Jacobs fell to the ground, two other men named Butter and Doughnut each shot Jacobs in the head and in the chest while he was on the ground. ***Id.*** at 123-125. Gray was shown a photo array and picked out photographs of Appellant and his co-defendants as those who shot Jacobs. ***Id.*** at 148.

---

[6] A "dime bag" is a term for $10.00 worth of crack cocaine. N.T., 7/10/12 at 123.

In addition to Gray's testimony, the Commonwealth presented two additional witnesses to establish Appellant as both "Butter" and one of Jacobs' shooters. One witness, Eleanore Sampson, who was an acquaintance of all three defendants, identified Appellant as "Butter." N.T., 7/11/12, at 213. Gould, who viewed the murder from his living room window, also identified Appellant as the man who shot Jacobs. *Id.* at 162.

Based on the above testimony, we reject both of Appellant's sufficiency arguments. The Commonwealth presented substantive evidence that identified Appellant as one of the three men who shot Jacobs in the head and in the chest, as an eyewitness was only a few feet away at the time of the shooting. Pennsylvania courts have consistently held that this is sufficient for a first-degree murder conviction. *See Commonwealth v. Mattison*, 82 A.3d 386, 392 (Pa. 2013) (concluding sufficient evidence existed where, "eye witness testimony demonstrate[d] that [the defendant] … fatally shot the victim in the head at close range while the victim was lying defenseless on the ground[]"). Additionally, the jury was free to believe and infer from Gray and Gould's original statements that an agreement existed between Appellant and his cohorts to kill Jacobs. *See Commonwealth v. Collins*, 70 A.3d 1245, 1250 (Pa. Super. 2013) (concluding that a jury can infer an agreement for conspiracy purposes where the defendant and a cohort arrive and leave the crime scene together), *appeal denied*, 80 A.3d

774 (Pa. 2013). As a result, Appellant is not entitled to relief on this issue. ***See Diamond***, *supra*.

In his second issue, Appellant avers that the jury's verdict was against the weight of the evidence. Specifically, Appellant argues that "the greater weight of the evidence does not establish that [Appellant] was the shooter." Appellant's Brief at 16. Appellant also argues that the weight of the evidence "does [not] establish that [Appellant] was a co-conspirator." ***Id.***

We begin by noting, "[a] claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Landis***, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted). An argument that the jury's verdict was against the weight of the evidence concedes that the evidence was sufficient to sustain the convictions. ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, ***Lyons v. Pennsylvania***, 134 S. Ct. 1792 (2014). Our Supreme Court has recently admonished that "[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). Instead, "the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Id.*** (internal quotation marks and citation omitted). "[A] new trial should be awarded

when the jury's verdict is so contrary to the evidence as to shock one's sense of justice …." *Id.*

As an appellate court it "is not [our role] to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citation omitted). An argument that the jury's verdict was against the weight of the evidence remains "[o]ne of the least assailable reasons for granting … a new trial …." *Id.* (citation omitted). "Thus, only where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal." *Id.* (citation omitted; emphasis in original).

In this case, Appellant avers that "the evidence as presented by the Commonwealth was contradictory and unreliable … [and] there [wa]s no eyewitness testimony identifying [A]ppellant as being involved in the shooting death of [Jacobs], and the civilian witnesses that did testify before the jury all denied inculpating [A]ppellant in any out-of-court statements." Appellant's Brief at 17-18.

To the extent these arguments speak to the weight of the evidence, as opposed to its sufficiency, we conclude Appellant is not entitled to relief. As noted above, through the use of her prior inconsistent statement to police, evidence was admitted that Gray witnessed Appellant and his co-defendants shoot Jacobs in the head and in the chest at close range. N.T., 7/10/12, at

123-125. In addition, the Commonwealth presented Gould's testimony that he witnessed the shooting from the view of his living room window. Specifically, Gould stated he heard gunshots outside and went to his window. N.T., 7/11/12, at 143. When Gould got to the window he saw "a person standing over [Jacobs's] body and shoot him in the head." *Id.* at 144. In his statement to the police, Gould identified that shooter as "Alonzo." *Id.* at 144-145. Gould identified Appellant at trial as that Alonzo. *Id.* at 145.

It is axiomatic that the jury is the ultimate finder of fact at trial.

> [T]he veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.

*Commonwealth v. Alicia*, 92 A.3d 753, 761 (Pa. 2014) (citation omitted). Likewise, "[t]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Feese*, 79 A.3d 1101, 1122 (Pa. Super. 2013), *appeal denied*, --- A.3d ---, 1035 MAL 2013 (Pa. 2014). This includes when a witness recants a prior statement. *See Commonwealth v. Hanible*, 30 A.3d 426, 443 n.11 (Pa. 2011) (stating, "the jury was free to evaluate both [the witness]'s statement to police as well as his testimony at

trial recanting that statement, and free to believe all, part, or none of the evidence[]") (citation omitted), *cert. denied*, **Hanible v. Pennsylvania**, 133 S. Ct. 835 (2013). Therefore, the jury was free to believe or disbelieve Gray and Gould's recantation of their prior statements to police and credit those original statements. **See id.** As an appellate court we will not reweigh the evidence and substitute our judgment for that of the fact-finder. **Commonwealth v. Serrano**, 61 A.3d 279, 289 (Pa. Super. 2013) (citation omitted). Based on these considerations, we conclude the trial court did not commit a palpable abuse of discretion when it denied Appellant's post-sentence motion arguing that the verdict was against the weight of the evidence. **See Morales**, **supra**.

In his third issue, Appellant avers that the trial court erred when it refused to grant a mistrial when the Commonwealth insinuated that Appellant was a drug dealer. Appellant's Brief at 19. As with Appellant's previous issues, we begin by stating our standard of review.

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will … discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A

mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

***Commonwealth v. Fortenbaugh***, 69 A.3d 191, 193 (Pa. 2013) (citation omitted); ***see also Commonwealth v. Culver***, 51 A.3d 866, 871 (Pa. Super. 2012) (stating, "we review the trial court's determination that a new trial was warranted due to prosecutorial misconduct for abuse of discretion[]") (citation omitted).

Appellant's argument is limited to the following incident which occurred during the Commonwealth's redirect examination of Detective Thomas Gaul.

> [Commonwealth]:    Based on the information you received -- and [defense counsel] has asked about [Jacobs], and the information that he was actively dealing in that same area; correct?
>
> [Detective Gaul]:  Yes, ma'am.
>
> [Commonwealth]:    Based on the information that you received from the witnesses -- were these three defendants also actively dealing in that area?
>
> …
>
> [Defense Counsel]:    Objection.
>
> …
>
> [Trial Court]:    Sustained.  The jury will absolutely disregard that last question.
>
> And [Commonwealth], you're done with your direct.
>
> …

- 14 -

Members of the jury, you will totally disregard the last question. It insinuated things that are not relevant to this case. That should not be considered by you. That should have no part in any consideration or discussions that you have during your deliberations.

…

[Defense Counsel]: Just for the record, notwithstanding the admonition, for the record, I make a motion for a mistrial based on counsel's last question.

[Trial Court]: Denied.

N.T., 7/12/12, at 131-132, 134.

Assuming *arguendo* that the Commonwealth's remark was improper, it does not follow that a new trial is warranted if the error is harmless. "[A]n error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error could not have contributed to the verdict." ***Commonwealth v. Luster***, 71 A.3d 1029, 1046 (Pa. Super. 2013) (*en banc*) (citation omitted), *appeal denied*, 83 A.3d 414 (Pa. 2013).

The Commonwealth bears the burden of establishing the harmlessness of the error. This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Green*, 76 A.3d 575, 582 (Pa. Super. 2013) (citation omitted; italics added), *appeal denied*, 87 A.3d 318 (Pa. 2014).

In this case, the Commonwealth presented additional evidence that Appellant sold drugs. Gray told the police in her original statement that Appellant attempted to sell her drugs but she rejected that offer. N.T., 7/10/12, at 122. Gould also testified via his original statement to the police that Appellant sold drugs in the neighborhood. N.T., 7/11/12, at 163. Furthermore, the following exchange occurred during Sampson's direct examination with the Commonwealth.

> [Commonwealth]: Do you see Butter in the courtroom today?
>
> [Sampson]: I'm not sure. I'm not sure which one it is. Wait a minute. I think it's the middle one is Butter I think.
>
> [Commonwealth]: Okay. Your Honor, for the record identifying Alonzo Ellison by point of finger and also by location in relation to the other defendants. … How did you know Butter?
>
> [Sampson]: Through drug activity.
>
> [Commonwealth]: What do you mean?
>
> [Sampson]: I would get drugs from him.
>
> [Commonwealth]: And would you also get drugs from him inside the projects?
>
> [Sampson]: No. Mostly I would have him come to my house.

*Id.* at 213-214.

- 16 -

Based on this testimony, at a minimum, we conclude that any error was harmless in this instance. At no point did Appellant object to the testimony of Gray, Gould or Sampson indicating that Appellant sold drugs. Therefore, the reference in question by the Commonwealth during Detective Gaul's redirect implying that Appellant sold drugs was harmless because it was *de minimis* and "was merely cumulative of other untainted evidence[.]" **Green**, **supra**. As a result, Appellant is not entitled to relief on this issue.

In his fourth issue, Appellant avers that the trial court erred in overruling an objection to a factual misstatement made during the Commonwealth's summation. Appellant's Brief at 21.

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

**Commonwealth v. Bedford**, 50 A.3d 707, 715-716 (Pa. Super. 2012) (*en banc*) (internal quotation marks and citations omitted), *appeal denied*, 57 A.3d 65 (Pa. 2012).

In the case *sub judice*, Appellant objected to the following remark by the Commonwealth during its closing argument.

> [Commonwealth]: Also, that Worm and [Appellant] had conversations about 9[-]millimeters. There was a 9-millimeter there. Butter asked Worm for his 9-millimeter. I mean these people have guns in [Sampson's] house.
>
> [Defense Counsel]: Objection.
>
> [Trial Court]: Overruled.

N.T., 7/13/12, at 96-97. Appellant argued that Sampson's statement actually was that Worm asked him for his 9-millimeter, not the other way around. *Id.* at 161. Appellant's recollection of Sampson's statement was accurate. *See* N.T., 7/11/12, at 231. Appellant argues that this was a "material misrepresentation" by the Commonwealth and that Appellant "was unfairly prejudiced." Appellant's Brief at 22.

After careful review, we conclude Appellant is not entitled to relief on this issue. Although the Commonwealth's recitation of the defendants' nicknames was backwards, Appellant has not pointed to anywhere in the record to support the notion that this singular reference was a deliberate "material misrepresentation." *Id.* Without such evidence, Appellant's argument cannot succeed. *See, e.g.*, *Commonwealth v. Simmons*, 662 A.2d 621, 639 (Pa. 1995) (concluding a new trial was not warranted where, "a review of the record does not show that the prosecutor's paraphrasing or misquotation of [a witness]'s testimony was deliberate[]") (citation omitted), *cert. denied*, *Simmons v. Pennsylvania*, 516 U.S. 1128 (1996); *Commonwealth v. Mollett*, 5 A.3d 291, 311 (Pa. Super. 2010) (stating,

"[a] prosecutor's declaration[s] during an opening or closing statement constitutes reversible error **only** if the prosecutor **deliberately** attempts to destroy the objectivity of the jury[]") (emphases added), *appeal denied*, 14 A.3d 826 (Pa. 2011).

In addition, the trial court also carefully instructed the jury regarding closing arguments as follows.

> You should keep in mind, however, that you are not bound by counsel's recollection of the evidence because it's your recollection of the evidence and yours alone that has to guide you when you deliberate.
>
> If there is a discrepancy between how the lawyers remember something and how you remember it, you should be guided by your own recollection.

N.T., 7/13/12, at 11-12.

It is axiomatic that "[t]he jury is presumed to follow the [trial] court's instructions." *Commonwealth v. Roney*, 79 A.3d 595, 640 (Pa. 2013) (citation omitted). Furthermore, our Supreme Court has held that courts may deem a prosecutorial misstatement cured by the trial court giving the above-quoted instruction to the jury. *Commonwealth v. Smith*, 995 A.2d 1143, 1164 (Pa. 2010) (citation omitted), *cert. denied*, *Smith v. Pennsylvania*, 131 S. Ct. 518 (2010). As the trial court gave such an instruction in this case, we conclude the trial court did not abuse its discretion in overruling Appellant's objection. *See Bedford*, *supra*.

Based on the foregoing, we conclude all of Appellant's issues on appeal are devoid of merit. Accordingly, the trial court's July 25, 2012 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2014