J-S55012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.S., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S., A MINOR, | |
| Appellant | No. 2484 EDA 2013 |

Appeal from the Order Entered July 29, 2013
In the Court of Common Pleas of Lehigh County
Juvenile Division at No(s): CP-39-JV-0000130-2010

BEFORE: BOWES, SHOGAN, and OTT, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 15, 2014**

J.S. appeals from the order imposing involuntary civil commitment to the inpatient Sexual Responsibility Treatment Program ("SRTP") at Torrance State Hospital pursuant to 42 Pa.C.S. § 6403(d).[1] We affirm.

During May 2010, a juvenile court found that J.S. committed a delinquent act that would have been classified as involuntary deviate sexual intercourse if committed by an adult. He previously was adjudicated delinquent during 2009 for committing what would have been an indecent assault against an autistic child in his neighborhood. The 2010 adjudication

---

[1] 42 Pa.C.S. §§ 6401–6409, commonly referred to as Act 21, was enacted effective February 10, 2004, "to provide for the assessment and civil commitment of certain sexually violent juveniles." ***In re K.A.P.***, 916 A.2d 1152, 1156 n.3 (Pa.Super. 2007), *aff'd per curiam*, 943 A.2d 262 (Pa. 2008).

stemmed from the sexual assault that J.S. committed against his younger half-brother, who is also autistic. The juvenile court subsequently entered a dispositional order finding J.S. in need of treatment, supervision, and rehabilitation, and it committed him to Cove Prep, a treatment facility for adolescent sexual offenders. J.S. made marginal progress over the next three years. The court succinctly summarized his treatment history as follows:

> On August 4, 2010, a Review of Placement Hearing was held. After hearing testimony regarding the Appellant's progress, including his initial difficulty in adjusting to the treatment facility and later signs of improvement, the Court maintained the Appellant's placement at Cove Prep.
>
> On February 10, 2011, the Court held a Review of Placement Hearing via teleconference with the Appellant's counselor at Cove Prep. Indications from the counselor were that the Appellant's responses to the specific sexual offender treatment were being overshadowed by the Appellant's aggressive and antisocial behaviors. Cove Prep indicated that the Appellant remained a high risk to commit acts of sexual and physical aggression. Again, the Court allowed the Appellant to remain at Cove Prep for additional therapeutic treatment. At the time of this Hearing, the Court explained the ramifications of Act 21 [42 Pa.C.S. § 6401- *et seq*.] to the Appellant.
>
> On May 11, 2011, the Court held a Review of Placement Hearing. The court report submitted by Cove Prep indicated that the Appellant was progressing in the program and that, in short, his treatment was going well. The Appellant expressed some concern about returning to the community and the Court determined that the Appellant should remain at Cove Prep to continue his treatment.
>
> On November 4, 2011, the Court held a Review of Placement Hearing. At that time, the Court heard testimony from the Appellant's therapist, who indicated that the Appellant was making progress therapeutically, although he still struggled

with peer-to-peer relationships. The Appellant was ordered to remain at Cove Prep for additional treatment.

On May 3, 2012, the Court held a Review of Placement Hearing. At that Hearing, the Court was made aware that the Appellant was making very little progress in his treatment and that the facility was attempting to "contain" the Appellant's behaviors as opposed to being able to engage him in actual treatment. Further, the Court was informed of an incident involving the Appellant and another client at the program where the two juveniles engaged in prohibited sexual contact. Due to the lack of progress the Appellant was making, the Court determined that the Appellant had failed to adjust to placement at Cove Prep and was committed to South Mountain Secure Treatment Unit [("SMSTU")] on May 10, 2012.

On July 5, 2012, the Court held a Review of Placement Hearing for the Appellant. At that time, he admitted to engaging in a significant amount of grooming behaviors and had been isolated from the other clients of the Program as a response to those inappropriate behaviors, though he was still receiving programming. The Court heard testimony regarding the Appellant's romantic interest in another client and the Appellant admitted to requesting inappropriate contact with that other resident. At the Hearing, the Appellant's counselor explained that the Appellant was working on social skills, sexual offending behaviors and coping behaviors. The therapist communicated that the communal goal was to help the Appellant avoid an Act 21 commitment.

Another Review of Placement Hearing was held on October 4, 2012. At the hearing, the Court heard from Brandy Dockey, the Appellant's treatment provider at SMSTU. She testified that the Appellant continued to struggle with certain aspects of the program, although he was beginning to learn to respect boundaries and progress in treatment. At that point in time, Ms. Dockey believed that there was much work to still be done and recommended that the Appellant be recommitted to SMSTU. The Court was also made aware that the Appellant was preparing for an Act 21 evaluation.

On December 19, 2012, another Review of Placement Hearing was held. Representatives from SMSTU informed that Court that the Appellant was regressing in his treatment and

- 3 -

> that he was actively choosing to disregard the facility's expectations of him and was being disrespectful and angry. Ms. Dockey explained that the Appellant was struggling in the program, had poor impulse control, and that he was not responding to the "level system" employed by the program. The Court continued the Appellant's placement at SMSTU.

Trial Court Opinion, 12/24/13, at 4-6 (footnote omitted).

Soon after J.S.'s twentieth birthday, the trial court referred this case to the Pennsylvania Sexual Offenders Assessment Board ("SOAB") for a risk assessment pursuant 42 Pa.C.S. § 6358. The purpose of the evaluation was to determine J.S.'s eligibility for court-ordered involuntary treatment pursuant to § 6403(a). SOAB member Veronique N. Valliere, Psy.D. performed the initial assessment based upon her review of the record, treatment reports, and relevant documentation. She did not interview J.S. Dr. Valliere concluded that J.S. met the statutory criteria for involuntary civil commitment of sexually violent delinquent children. SOAB submitted Dr. Valliere's sex offender assessment to the trial court on April 23, 2013.

Upon review of Dr. Valliere's thorough report, the trial court found *prima facie* case evidence that J.S. was in need of involuntary civil commitment. Accordingly, pursuant to § 6403(b), it directed that the Lehigh County Solicitor file a petition for involuntary civil commitment on behalf of Lehigh County Office of Children and Youth Services ("CYS"). The court directed that J.S. be made available for interview by SOAB and an expert of his choosing.

Dr. Valliere conducted a clinical interview of J.S. at her office on July 2, 2013, and she issued an addendum to her April report the following day. Dr. Valliere opined that her interview with J.S. did not alter her prior opinion that J.S. met the statutory criteria for civil commitment of sexually violent delinquent children. Thereafter, Frank Dattilio, Ph.D., the psychologist who performed J.S.'s initial diagnosis and placement recommendation during the 2010 adjudication and disposition, conducted a re-evaluation and an updated sex offender assessment. Contrary to Dr. Valliere's assessment and professional opinion that J.S.'s commitment for sexually violent children was warranted, Dr. Dattilio concluded that a voluntary step-down program or its equivalent would satisfy the best interest of J.S. and the community as opposed to involuntary commitment.

Following a two-day evidentiary hearing wherein the trial court considered the evidence presented by both psychologists and Brandy Dockey, the masters level clinician at SMSTU who was assigned to J.S., the trial court found by clear and convincing evidence that J.S. met the criteria necessary for involuntary civil commitment of sexually violent children, *i.e.*, that J.S. has a mental abnormality or personality disorder which results in his serious difficulty in controlling sexually violent behavior that makes him likely to engage in acts of sexual violence. ***See*** 42 Pa.C.S. § 6403(a) and (d). As noted, the trial court committed J.S. to SRTP at Torrance State Hospital for a term of one year.

J.S. filed a timely appeal,[2] and he complied with the trial court's order to file a concise statement of matters complained of on appeal. He presents the following question for our review:

> Whether the lower court's . . . determination was against the weight of the evidence because it failed to give due authority to the credibility and reliability of [Dr. Dattilio,] who backed up his opinions by citation to prevailing, relevant research, made contact with collateral sources, conducted lengthy evaluations of Appellant in 2010 and in 2013, and utilized a number of reliable testing instruments to assist in the determination of Appellant's likelihood of reoffending?

Appellant's brief at 4.

To prevail on a petition for involuntary civil commitment under Act 21, the agency must prove the statutory criteria for court-ordered involuntary treatment by clear and convincing evidence. **See In re A.C.**, 991 A.2d 884, 893 (Pa.Super. 2010) ("Act 21 places the burden on the Commonwealth to establish by clear and convincing evidence that the person is likely to commit a sexually violent act before it can subject that person to a one-year

---

[2] The notice of appeal filed on August 29, 2013 is ostensibly one day late. The notice of appeal must be filed within thirty days after entry of the order from which the appeal is taken. **See** Pa.R.A.P. 903(a). However, for purposes of computing time under the appellate rules, the date of entry of an order is the day that the clerk of the court mails or delivers copies of the order to the parties. **See** Pa.R.A.P. 108(a). Instantly, the clerk of the juvenile court noted on the docket that it provided notice to J.S.'s counsel on July 30, 2013. Hence, the notice of appeal filed on August 29, 2013 was timely. **See Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) ("an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given") (citations omitted).

period of involuntary civil commitment[.]"); 42 Pa.C.S § 6403(d). The relevant statutory criteria are that the juvenile: (1) was adjudicated delinquent for an act of sexual violence; (2) is committed to an institution or treatment facility as result of the adjudication and remains in facility upon attaining the age of twenty; and (3) is determined to be in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence. *See* 42 Pa.C.S. § 6403(a).

Act 21 defines a sexually violent delinquent child ("SVDC") as "A person who has been found delinquent for an act of sexual violence which if committed by an adult would be a violation of [, *inter alia*,] 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse), . . . and who has been determined to be in need of commitment for involuntary treatment under this chapter." 42 Pa.C.S. § 6402. A mental abnormality is defined as "[a] congenital or acquired condition of a person affecting the person's emotional or volitional capacity." *Id*.

J.S.'s argument on appeal implicates the third component of the statutory criteria enumerated in § 6403(a). He explicitly asserts that the trial court's determination was against the weight of the evidence. However, in addition to that weight claim, J.S. includes a latent sufficiency of the evidence claim that permeates his legal argument. Accordingly, we review

the latter aspect of J.S.'s contentions at the outset, and for the following reasons, we reject it.

Stated succinctly, the certified record sustains the trial court's finding that the agency presented clear and convincing evidence to prove the statutory criteria for involuntary civil commitment under Act 21. J.S. was a juvenile adjudicated delinquent for an act of sexual violence and he remained committed to a treatment facility upon attaining the age of twenty. Hence, the first two aspects of the statutory criteria were unquestionably satisfied. Furthermore, J.S. does not contend that the agency failed to establish that he has a mental abnormality or personality disorder. Indeed, he concedes the diagnosis of a personality disorder[3] and paraphilia not otherwise specified ("NOS") with elements of non-consent and exhibitionism. He merely asserts that Dr. Valliere failed to establish a nexus between those diagnoses and his likelihood of committing future acts of sexual violence. We disagree.

During the Act 21 hearing, Dr. Valliere was qualified as an expert in psychology and the evaluation and treatment of sexual offenders. N.T., 7/19/13, at 9. She has been a member of the SOAB since 1997. *Id*. at 12. She testified that she has conducted forty to fifty Act 21 assessments and

_____

[3] The experts disagreed on the type of J.S.'s personality disorder. While Dr. Valliere diagnosed antisocial personality disorder, Dr. Dattilio ruled out that disorder and identified paranoia and borderline personality disorder.

that she has made both recommendations in favor of continued treatment and recommendations against commitment as the particular cases required. *Id*. at 12-13. As it relates to J.S.'s challenge, Dr. Valliere highlighted several risk factors regarding his likelihood to reoffend. Specifically, she observed the persistence of J.S.'s sexual behaviors and aggression despite his restrictive environments at Cove Prep and SMSTU. *Id*. at 19. She was particularly concerned about J.S.'s continued grooming of peers notwithstanding the level of supervision in the institutionalized setting. *Id*. at 20. She noted that J.S.'s treatment regimen provided the highest level of structure and behavioral intervention to help him redirect or manage his urges, and that, despite these resources, he still failed to progress in terms of self-management. *Id*. at 20, 21-22. Upon further inquiry, Dr. Valliere explained,

> [W]hat I want to make clear to the court is there are very few diagnoses that motivate sexual aggression, so I focused on the things that were directly related to the referral issue. And in my opinion, . . . what motivated [J.S.'s] sexual behavior . . . and [his] difficulties in this residential [treatment] are twofold.
>
> One, I believe he has a sexually deviant interest to non-consensual sexual contact, and there are elements, also, of exhibitionism in his sexual behavior, which is exhibiting one's sexual behavior, genitals, or sexually stimulating situations or objects to non-consenting others. Obviously, in his coercive sexual acts with his victims, that would be the non-consensual part. Not only did the victims not comply and could not comply, he also offended his brother when he was sleeping, at least at times, which is [a] nonconsensual . . . state.
>
> . . . .

- 9 -

So his ongoing behaviors, the masturbating and leaving his semen where people could be disgusted or shocked by it, those are all exhibitionistic qualities. So I believe he meets that [diagnosis of paraphilia with exhibitionist interests]. And that diagnosis can be made because his offensive behavior continued past the age of sixteen, which is what is required for a diagnosis of paraphillic arousal.

*Id*. at 23-25. Dr. Valliere opined that, when combined with J.S.'s antisocial personality disorder, J.S. is burdened by a "serious difficulty in controlling his sexually dangerous behavior." *Id*. at 26.

As it relates specifically to the assessment of J.S.'s risk to the community, Dr. Valliere identified several factors present in J.S.'s case that pertain to his risk of recidivism. She highlighted, "He has male victims, he has unrelated victims, he has a history of physical violence. He had multiple offenses. He has a prolonged period of offending, and [he] has offended in a restrictive environment." *Id*. at 27. She continued, "He has ongoing issues with self-management. He has . . . had very sophisticated and deviant sexual offense fantasies that have facilitated his . . . ability to lure and take advantage of his victims. **Those are all related to recidivism**." *Id*. at 28 (emphasis added).

Overall, Dr. Valliere opined that, if J.S. is not committed, there is no guarantee that he would receive adequate supervision upon reaching the age of majority. *Id*. at 28. She explained that, while other voluntary treatment options exist, involuntary civil commitment is the only way to continue to treat offenders like J.S., who have completed treatment as a

juvenile and still pose a risk to the community due to their inability to self-manage their condition. *Id*. at 29. Furthermore, as it relates to her then-recent interview with J.S., Dr. Valliere testified that the exchange did not reveal any concerns that altered her prior opinion regarding J.S.'s inability to acquire the ability to self-manage prior to the expiration of the six-month period preceding his unsupervised release into the community. *Id*. at 29-33. To the contrary, the interview confirmed her impression of "his offending strategies and how in detail[,] . . . instrumental and gratifying the strategies are." *Id*. at 31. Dr. Valliere elucidated that she was extremely concerned about "his offensive behavior [which included] not only the sexual abuse of the children, but [also] the masturbating and the hostility, and the interconnection he has between his sexual arousal and sexual behavior, and anger and retaliation[.]" *Id*. Dr. Valliere concluded her risk-assessment testimony by observing,

> So he's at a place where he may be more amenable to the interventions, but he is not in a place where I believe he can manage, given the timeframe, [or] be even close to developing the skills to manage himself in the community. And that's a big risk for him, because he is an adult, even though we're in juvenile court. And I think it's easy to forget that . . . he is a 20 year-old man and not a 16 year[-]old juvenile at this point.

*Id*. at 32-33.

In light of the foregoing evidence adduced during the Act 21 hearing, we conclude that the certified record belies J.S.'s contention that the agency failed to link his mental health diagnoses of paraphilia and personality

- 11 -

disorder with his probability of recidivism. Contrary to J.S.'s contention, the evidence establishes that J.S.'s mental abnormality, *i.e.*, paraphilia as well as his exhibitionism and aggression, results in his serious difficulty in controlling his sexually violent behavior and makes him likely to engage in acts of sexual violence if he is released unsupervised into the community. Thus, this claim fails.

Next, we address the weight of the evidence. The crux of J.S.'s weight claim is that the trial court erred in accepting Dr. Valliere's expert opinion over that of Dr. Dattilio. J.S. contends that Dr. Dattilio's opinion deserved greater regard than Dr. Valliere's because Dr. Dattilio interviewed him twice: once at the outset of the case and again prior to the Act 21 hearing to determine whether court-ordered involuntary treatment was appropriate. J.S. emphasizes that Dr. Dattilio submitted him to a battery of mental health tests to determine his likelihood of reoffending and interviewed collateral sources such as J.S.'s treatment team at SMSTU, probation officer, and mother. J.S. continues that, since Dr. Valliere interviewed him only once for approximately one hour and failed to perform psychological testing or interview collateral sources, Dr. Dattilio's opinion provided a more accurate gauge of his progress in treatment than Dr. Valliere's opinion. J.S. concludes, "Dr. Valliere's conclusions about [his] sexually violent behavior and likelihood of reoffending were inadequate, arbitrary, and unsupported by the facts, and pale in comparison to Dr. Dattilio's analysis." Appellant's brief

at 30. Thus, contending that the trial court erred in relying upon Dr. Valliere's report and testimony in order to determine that he was an SVDC, J.S. demands a new Act 21 hearing. For the following reasons, no relief is due.

We review the trial court's determination that J.S. was an SVDC in need of involuntary commitment for an abuse of discretion. *Cf. Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000); *Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa.Super. 2011) ("We discern no basis on which to distinguish our standard of review on weight claims, whether challenging the weight of the evidence to support a guilty verdict or a trial court's SVP determination"). In *Ratushny*, we reiterated that, even in the context of a sexual offender assessment determination, the appellant must level the weight of the evidence claim before the trial court in the first instance, because as an appellate court, we will not substitute our judgment based upon a cold record. *Id*. As it relates to the instant case, we observed that "The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." *Id*. Consequently, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Widmer*, *supra* at 753.

Herein, the trial court responded to J.S.'s weight claim in its opinion filed pursuant to Rule 1925(a). Specifically, after outlining the relevant evidence proffered by Dr. Valliere, Dr. Dattilio, and Ms. Dockey during the Act 21 hearing, the trial court explained,

> After hearing the testimony presented at the Act 21 Hearings, carefully reading the expert reports issued by Dr. Valliere and Dr. Dattilio, and considering arguments of counsel, the Court determined that the Appellant met the criteria outlined in 42 Pa.C.S. § 6403(a), which called for involuntary commitment. Both Dr. Valliere and Dr. Dattilio agreed that the Appellant suffers from a personality disorder (paraphilia not otherwise specified [("NOS")]), although they did not agree that the Appellant had anti-social personality disorder. Ms. Dockey, presumably the closest and most connected to the Appellant's actual treatment and progress, specifically acknowledged that she would **not** feel comfortable releasing the Appellant into the community without mandated continuing treatment.

> In addition to consideration of the evidence and testimony taken during the Act 21 Hearing, the Court was also able to watch and oversee the progression of the underlying incident and juvenile court case from its inception. The Court is well aware of the Appellant's familial support and their involvement in the Appellant's treatment. Ultimately, the Court believed that the Appellant "had run out of time" for continued treatment at SMSTU. The Court further determined that the Appellant suffers from Paraph[i]lia, a qualifying mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence. The Court was persuaded by clear and convincing evidence that such a risk exists because the Appellant has failed to successfully complete the treatment program and could not do so with the time remaining before the Appellant's 21st birthday. Therefore, at the conclusion of the Act 21 Hearing on July 23, 2013, the Court committed the Appellant to the SRTP at Torrance State Hospital for a period of one year.

Trial Court Opinion, 12/24/13, at 14-15 (emphasis in original).

Only where the facts and inferences disclose a "palpable abuse of discretion," will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal. ***Commonwealth v. Houser***, 18 A.3d 1128, 1136 (Pa. 2011). Instantly, J.S has not demonstrated that the trial court committed a palpable abuse of discretion by rejecting his request for a new Act 21 hearing based on the weight of the evidence. He simply advocates for the trial court to elevate Dr. Dattilio's expert opinion over that of Dr. Valliere. However, as the the trial court indicated in its Rule 1925(a) opinion, it considered aspects of both experts as well as the expert opinion proffered by J.S.'s treating clinician. In sum, the trial court reasoned that both experts agreed that J.S. suffered from paraphilia, a qualifying mental abnormality under the act, and that neither of the psychologists for the clinician believed that J.S. was safe to release into the community without further treatment. Significantly, the court acknowledged implicitly that due to his age, any proposed treatment other than civil commitment under Act 21 would be voluntary and it recognized that J.S.'s treatment record to that juncture was mediocre at best.

It is beyond cavil that the weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence. ***E.g***. ***Commonwealth v. Diamond***, 83 A.3d 119, 134 (Pa. 2013) ("In more general terms, the fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the

fact-finder"). Indeed, "the weight to be ascribed to any testimony is a determination that rests exclusively with the finder-of-fact." *Id*. Accordingly, the fact finder is not required to accept any testimony, including expert testimony, offered by either party. *Id*.

Herein, the trial court accepted the expert evidence proffered by J.S. and the agency, respectively, and based upon J.S.'s failure to make significant progress despite nearly three years of treatment in a restrictive environment, it resolved the issue of conflicting expert opinions regarding J.S.'s likelihood to reoffend in the agency's favor. As the trial court is the arbiter of the weight to impart on an expert opinion, we will not disturb the court's findings herein. Since we discern no abuse of discretion by the trial court, J.S.'s claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2014