J-S96040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMEELE HAKEEM'ALI WILLIAMS | |
| Appellant | No. 534 WDA 2016 |

Appeal from the Judgment of Sentence Dated March 9, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000815-2015

BEFORE:  BENDER, P.J.E., BOWES, J., and SOLANO, J.

JUDGMENT ORDER BY SOLANO, J.:                **FILED MARCH 14, 2017**

Appellant, Jameele Hakeem'ali Williams, appeals from the judgment of sentence following a jury trial and convictions for possession of an instrument of crime,[1] carrying firearms without a license,[2] and reckless endangerment.[3] On appeal, he challenges the sufficiency of the evidence for his firearms conviction, the weight of the evidence for all his convictions, and the discretionary aspects of his sentence. We affirm.

The trial court's opinion accurately sets forth the facts and procedural history.  Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement, and raises the following issues on appeal:

---

[1] 18 Pa.C.S. § 907(a).

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 2705.

The evidence in this case was insufficient to support the firearms not to be carried without a license charge since the Commonwealth did not present testimony of the actual barrel length of the alleged firearm.

The verdict in this case was against the weight of the evidence in that the evidence did not prove that [Appellant] was the individual who actually discharged the firearm[.]

The sentence in this case was manifestly excessive and clearly unreasonable when the court's sentence fell within the aggravated range of the sentencing guidelines and the specific traits of [Appellant].

Appellant's Brief at 3.

Our standard of review as it pertains to Appellant's sufficiency argument follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa. Super.) (citation omitted), *appeal denied*, 145 A.3d 725 (Pa., Sep. 6, 2016).

A weight claim must be preserved by raising it with the trial court. **See** Pa.R.Crim.P. 607(A). When properly preserved, our standard of review of a weight claim is:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

**Commonwealth v. Ramtahal**, 33 A.3d 602, 609 (Pa. 2011) (citation omitted).

Finally, the law governing our review of a challenge to the discretionary aspects of a sentence is well-settled:

> Our jurisdiction to hear such a challenge is discretionary, and we may not exercise our discretion to review such an issue unless we first determine that: (1) the appeal is timely; (2) Appellant preserved his issue; (3) Appellant's brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentences, as required by Rule 2119(f) of the Pennsylvania Rules of Appellate Procedure; and (4) that concise statement raises a substantial question that the sentences were inappropriate under the Sentencing Code.

**Commonwealth v. Flowers**, 149 A.3d 867, 870 (Pa. Super. 2016) (footnote and citation omitted).

Instantly, after careful review of the record, the parties' briefs, and the opinion of the Honorable Robert A. Sambroak, Jr., we affirm based on the trial court's opinion. *See* Trial Ct. Op., 7/13/16, at 9-14 (holding evidence established barrel length of Appellant's firearm was less than fifteen inches because, among other things, a witness testified the gun was approximately ten inches in length and Appellant withdrew the gun from his pants pocket; Appellant failed to preserve his weight claim; and the court complied with the Sentencing Code in sentencing Appellant). Accordingly, having discerned no abuse of discretion, or error of law, we affirm the judgment of sentence.

In the event of further proceedings, the parties shall attach a copy of the trial court's July 13, 2016 opinion to this memorandum.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/14/2017

- 4 -

COMMONWEALTH OF PENNSYLVANIA )IN THE COURT OF COMMON PLEAS
) OF ERIE COUNTY, PENNSYLVANIA
v. )
)
)
JAMEELE HAKEEM'ALI WILLIAMS ) No. 815 of 2015

## 1925(a) OPINION

On March 9, 2016, the Defendant was sentenced to serve an aggregate term of eighty seven months to one hundred eighty six months (seven years, three months to fifteen years, six months) incarceration after conviction by a jury of recklessly endangering another person, a misdemeanor of the second degree, firearms not to be carried without a license, a felony of the third degree, and possessing an instrument of a crime, a misdemeanor of the first degree. At the same time, the Defendant was revoked from probation and re-sentenced at two other dockets.

The defendant in this appeal now claims the sentence was manifestly excessive and the conviction itself against the weight of the evidence. He also alleges there was insufficient evidence presented to support a conviction for Firearms to Be Carried Without a License. The Defendant's arguments afford him no basis for relief. It is therefore requested the Superior Court affirm the judgment of sentence.

## BACKGROUND

### *Procedural History*

The Defendant was charged with the criminal homicide of Arbie Wilson, conspiracy to commit criminal homicide, one count of aggravated assault on an individual named Derick Hemphill, an additional count of aggravated assault on Arbie Wilson, possession of an instrument of crime, firearms not to be carried without a license, criminal attempt at criminal homicide, and recklessly endangering another person.

1

Following a pre-trial motion hearing, the conspiracy charge was dismissed. No appeal was taken by the Commonwealth.

Trial began on August 31, 2015. At the conclusion of the Commonwealth's case-in-chief, the Defendant's motion for judgment of acquittal for the charge of criminal attempt to commit criminal homicide was granted.

A jury then found the Defendant not guilty of criminal homicide and both counts of aggravated assault. The jury found the Defendant Guilty of recklessly endangering another person, but was unable to reach a verdict as to the other charges. A mistrial on those charges was declared.

The Commonwealth retried the Defendant on the deadlocked counts. In the interim, the Defendant filed a motion to sever the remaining charges from that of his co-defendant, Keith Horton. The motion was granted.

At the end of the second trial, the Defendant was convicted by a jury on all remaining charges.

On March 9, 2016, the Defendant was sentenced at Docket 815-2015 and revoked and resentenced at Dockets 1709-2014 and 3134-2011 to an aggregate sentence of eighty seven months to one hundred eighty six months incarceration (seven years, three months to fifteen years, sixteen months). Defendant's timely post-sentence motions were denied.

The Defendant filed a timely notice of appeal on April 13, 2016. That same day, this court directed the Defendant to file his 1925(b) statement within twenty-one days. Subsequently, the Defendant filed two petitions to extend the time within which to file this statement because the transcripts of the trial were not yet available for review by defense counsel. Each request was granted. The statement was finally ordered filed by June 27, 2016 and counsel complied.

2

## *Facts*

On the evening of November 21, 2014, the Defendant attended a birthday party for a friend at the Red Tomato Lounge on the corner of 18th and Peach Streets in the City of Erie. The victim, Derrick Hemphill, was also present with his girlfriend, Shadarea Flemings. They arrived at the Red Tomato around 1:00 a.m. *Jury Trial, Transcript, Day 2, 2/2/16, p. 27-29.*

At some point, Ms. Flemings briefly left the Red Tomato with a female friend to get cigarettes from her car, which was parked in the Firestone parking lot across the street from the Red Tomato. *Jury Trial Transcript, Day 2, 2/2/16, p. 27, 31.*

After retrieving her cigarettes, Ms. Flemings returned to the party. However, security did not search her when she re-entered. A man standing near the door, Keith Horton, commented to the security guards about this. The security guards asked Ms. Flemings to return to the doors and to submit to a search. Ms. Flemings, though compliant, became irate, started to scream, yell, and "run her mouth." *Jury Trial Transcript, Day 2, 2/2/16, p.32-33, 35.*

A verbal altercation took place between Mr. Horton and Ms. Flemings. The Defendant decided to join in. He told Ms. Flemings he was going to "beat her ass and make her go get her dude." *Jury Trial Transcript, Day 2, p. 33-34.* Eventually, Flemings returned to the party room where Hemphill was waiting for her and told him what happened. The Defendant did not follow her or continue the argument inside the Red Tomato. *Jury Trial Transcript, Day 2, 2/2/16, p. 36.*

Soon after, Mr. Hemphill and Ms. Flemings left the Red Tomato together. While Ms. Flemings and Mr. Hemphill were leaving the party, Ms. Flemings was still irate and "running her mouth." *Jury Trial Transcript, Day 2, 2/2/16, p. 37.*

While in the middle of 18th Street, heading towards the Firestone parking lot, Ms. Flemings and Mr. Hemphill heard people coming around the back of the Red Tomato, shouting.

3

Ms. Flemings identified two individuals—one as the Defendant, and one as Mr. Horton. The Defendant threw down his jacket and ran up to where Horton, Flemings, and Hemphill were standing. Hemphill asked the Defendant if he wanted to fight. *Jury Trial Transcript, Day 2, 2/2/16, p. 39-40.*

Mr. Hemphill started to "square off" with the Defendant. Ms. Flemings testified that in the midst of this, she saw the Defendant reach in his pocket and try to take something out. At that point, Flemings yelled to Hemphill that the Defendant had a gun and to run. *Jury Trial Transcript, Day 2, 2/2/16, p. 40, 60.* Mr. Hemphill ran. Flemings watched the Defendant chase Hemphill while firing shots at him. She was adamant she saw a gun in the hands of the Defendant and that he was firing it at her boyfriend. *Jury Trial Transcript, Day 2, 2/2/16, p. 41.*

After Hemphill ran, Ms. Flemings lost track of him and got a ride home with someone else in the parking lot. She then called the police. *Jury Trial Transcript, Day 2, 2/2/16, p. 42.* She did not see Mr. Hemphill again until hours later when he arrived home. *Jury Trial Transcript, Day 2, 2/2/16, p. 43.*

Ms. Flemings identified the Defendant and Horton as the persons on a video of the incident retrieved from the Labor Temple Building. The video showed the Defendant and Horton returning to a car, opening the door, and taking something from it. *Jury Trial Transcript, Day 2, 2/2/16, p. 66-67.* The Commonwealth alleged this item was a firearm.

The Commonwealth also presented testimony from John Leggiero, an eyewitness to the incident. Leggiero testified that while he and his friends were leaving the King's Rook Club around 1:45 a.m. on November 22, 2014, he saw what appeared to be a fight in the middle of 18th street. He described seeing two people meeting face-to-face in the street, with other people on the sidewalk gathering to watch. *Jury Trial Transcript, Day 2, 2/2/16, p. 4-6.* During the few

4

seconds Leggiero and his friends stopped their car to watch, Leggiero testified he saw the person facing west pull out a gun. *Id. at 7.* The person facing east did not have a weapon. Leggiero saw this individual run west, towards his car. *Id. at 8.* The person fleeing got within five to seven feet of him. *Id.* Their car was directly in the shooter's line of fire, so Leggiero and company quickly turned right leaving the parking lot and drove to Peach Street, away from the trouble. *Id. at 9-10.*

Leggiero stated the person fleeing was wearing jeans and a gray hoodie. The person who had the weapon was wearing a white hoodie and jeans. *Jury Trial Transcript, Day 2, 2/2/16, p. 13.* He described the gun as large, about ten inches long, and chrome in color. *Id. at 16.*

Various officers of the Erie City Police Department were dispatched to the area of 18th Street between Peach and State Streets for shots fired. *Jury Trial Transcript, Day 2, 2/2/16, p. 73.* Detective Jay White was called to the scene to collect evidence and take photographs. *Id. at 72.* White recovered twenty shell casings, bullet fragments, and live rounds in the surrounding area. He also recovered a firearm with no live rounds chambered and a full eleven round magazine. *Id. at 85-86.* He photographed the location where the physical objects were found before sending the items themselves to the Pennsylvania State Police Crime Lab for analysis. *Id at 75.*

Shell casings, bullet fragments, and live rounds were also found in front of the Firestone building, in front of the entrance to the Erie Motel, near the garage bay doors of the Firestone lot, in the middle of 18th Street, the crosswalk area of 18th Street, and in and around the driveway to the Firestone Parking Lot. *Jury Trial Transcript, Day 2, 2/2/16, p. 77, 79, 80, 82, 85, 88-89.* All of the shell casings, bullet fragments, and live rounds recovered were .40 caliber cartridges or casings. *Id. at 94.*

5

Video feed was recovered from the Labor Temple building on State Street and the hotel. *Id. at 90-91.* In the hotel video, footage of the actual incident had somehow been erased or deleted and could not be restored, despite attempts by the forensics lab to recover it. *Id. at 91-92.* The video from the Labor Temple, however, was crucial to the Commonwealth's case and played several times for the jury by both sides and during closing arguments. It showed the defendant and his codefendant running to a car on State Street, taking from the car what appeared to be guns, then running back up to the hotel area. Within seconds the video then shows the two running back to the car, picking up a third passenger then driving away from the scene as police began arriving in response to a shots fired call.

Sergeant Anthony Ferraro of the Pennsylvania State Police testified as an expert in firearm and tool examination. *Jury Trial Transcript, Day 2, 2/6/16, p. 109.* Among the items Ferraro analyzed were sixteen discharged cartridge cases, four discharged and mutilated metal bullet jacket fragments, four mutilated bullet fragments, a Beretta semiautomatic pistol and detachable box magazine for that pistol, eleven undischarged cartridges, and three additional undischarged cartridges that were collected from the same scene. *Id. at 111.* Based on his education, training, and experience, Ferraro determined that thirteen of the sixteen cartridge cases were discharged from one unknown firearm. He could not identify whether the four bullet fragments were discharged from the same firearm. *Id. at 115.* The other three undischarged casings came from a different gun. *Id. at 116.*

Based on the markings on the casings, Ferraro was able to narrow down the type of gun that may have discharged the casings to several firearms, a Glock, *Id at 123,* and guns manufactured by Federal Arms, Smith and Wesson, and Storm Lake. *Id at 127.* No handgun of was found by the police matching any type of firearm manufactured by these companies.

6

Detective Kemling of the Erie Police Department was called by the Commonwealth to lay the foundation for the videotaped statement Mr. Hemphill gave to police once Hemphill took the stand as a Commonwealth witness and basically claimed he did not remember anything about the events that night. The taped statement was played for the jury. Among other details, Hemphill in his interview described the shooter as carrying a "Glock." He further commented that if a gun wasn't a revolver, it was a Glock, to describe how he defined and characterized different types of firearms.

Kemling also authenticated the Pennsylvania State Police Certification Regarding License to Carry a Firearm and confirmed the Defendant was not an individual licensed to carry. *Jury Trial Transcript, Day 2, 2/2/16, p. 141.* Finally, Kemling narrated how the video secured from the front lobby of the Erie Hotel was located and retrieved. While the video did not show the actual shooting or the defendant with a gun, it did show several individuals running. One individual was wearing a white hooded sweatshirt. *Jury Trial Transcript, Day 2, 2/2/16, p. 147.*

Based on these facts, the second jury convicted the Defendant of firearms not to be carried without a license (F3), and possessing an instrument of a crime (M1).

## ISSUES PRESENTED

The defendant first claims his sentence was manifestly excessive and clearly unreasonable in that it failed to consider the Defendant's rehabilitative potential and was handed down without sufficient reasons stated on the record.

Second, the evidence was insufficient to support the Firearms Not to be Carried Without a License charge since the Commonwealth did not present testimony of the actual barrel length of the alleged firearm.

7

Third, the jury's decision in the case was against the weight of evidence since the evidence did not prove the Defendant was the individual who actually discharged the firearm.

## STANDARD OF REVIEW

The imposition of a sentence is vested in the discretion of the sentencing court and will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Walls,* 926 A.2d 957 *(Pa. 2007) (citing Commonwealth v. Smith, 673 A.2d 893, 895 (Pa. 1996)).* An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.*

When reviewing a claim challenging the sufficiency of the evidence, the appellate court considers "whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." *Commonwealth v. Patterson, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), cert. denied, Patterson v. Pennsylvania 135 S. Ct. 1400 (2015).*

"The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Watley, 81.3d 108, 113 (Pa. Super. 2013).* "[T]he trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." *Id.* However, the "evidence need not preclude every possibility of innocence." *Id.* Furthermore, the appellate court is "not permitted to re-weigh the evidence and substitute [its] judgment for that of the fact-finder." *Id.*

8

"Because evidentiary sufficiency is a question of law, [the appellate court's] standard of review is *de novo* and [its] scope of review is plenary." *Commonwealth v. Diamond, 83 A.3d 119, 126 (Pa. 2013).*

The standard of review regarding a claim the jury verdict was against the weight of the evidence is likewise well-settled. A claim such as this is "addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence." *Commonwealth v. Karns, 50 A.3d. 158, 165 (Pa.Super.2012).*

Additionally, the fact finder is "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [factfinder's] verdict is so contrary to the evidence that it shocks one's sense of justice." *Id.* To determine whether this standard has been met, appellate review "is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Id.*

However, when a claim the jury's verdict was against the weight of the evidence was not raised orally on the record, at any time before sentencing, by written motion at any time before sentencing, or in a post-sentence motion, that claim is waived on appeal. *See Pa. R. Crim.P. 607. See also Commonwealth v. Priest, 18 A.3d 1235, 1239 (Pa. Super. 2011).*

## DISCUSSION

The Defendant first challenges the legitimacy of his sentence, claiming it was manifestly excessive, clearly unreasonable, was not supported by the record, and failed to consider the Defendant's rehabilitative potential and other mitigating factors.

9

A sentencing court is required to place on the record its reasons for imposition of sentence. 42 Pa. Cons. Stat. §9721(b). Failure by a court to state of record any reason for the sentence imposed presents a substantial question for review. *Commonwealth v. Cappellini, 690 A.2d 1220 (Pa. Super. 1997).* The sentencing judge can satisfy this requirement by identifying on the record that he was informed by a pre-sentence report. *Commonwealth v. Devers, 546 A.2d 12 (Pa. 1988).*

Where the sentencing court has the benefit of a pre-sentence report, it is presumed the court was aware of the relevant information regarding the Defendant's character and weighed those considerations along with the mitigating statutory factors delineated in the Sentencing Code. *Commonwealth v. Cruz-Centeno, 668 .A2d 536, 545 (Pa. Super. 1995).* An appellate court will not substitute its judgment for that of the sentencing court. *Commonwealth v. Rogers, 563 A.2d 165, 168 (Pa. Super. 1989).*

When considering whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion because it is in the best position to measure the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Ellis,* 700 A.2d 948 (Pa. Super. 1997).

Finally, when the sentencing court has handed down a sentence in the aggravated range, a court must state its reasons on the record and the record must support the court's sentence. *Pa. Commonwealth v. Widmer, 667 A.2d 215 (Pa. Super. 1995).* Prompt or recent recidivism is an aggravating factor because it gives "rise to an inference of intransigence rather than a mere relapse following sincere attempts to reform." *Commonwealth v. Penrod, 578 A.2d 486, 491 (Pa. Super. 1990). See also, Commonwealth v. Eck, 654 A.2d 1104, 1106-07 (Pa. Super. 1995)*

10

*(considering information that a crime committed while defendant was on probation was an aggravating sentencing factor).*

Among those factors in this case considered and made part of the record were: 1) the pre-sentence report; 2) revocation summary; 3) statements of counsel and family members; 4) the defendant's own statement; 5) letters received on the defendant's behalf; 6) the nature of the offenses, given the testimony at trial, 7) the defendant's rehabilitative needs, and the impact of the crimes on the community; 8) the fact the defendant committed the currents crime while on supervision for the same crime at docket 1709-2014; 9) the previous reckless endangerment charge involving a firearm at docket 3134-2011; 10) the defendant's lack of treatment needs; and 11) the age of the defendant. *Parole/Probation Revocation and Sentencing Transcript, 3/9/16, p. 16-17,*

Weight was given to the serious impact the Defendant's actions had on the community. The Defendant's charges stemmed from a situation in which he retrieved a gun from a vehicle and fired shots on a major public street with a crowd present. He then chased the victim, Derrick Hemphill up another busy and well- traveled public street, with intent to harm him. *Parole/Probation Revocation and Sentencing Transcript, 3/9/16, p. 18.*

Additionally, weight was given to the fact the Defendant committed the offenses while on supervision for only two months on another gun related offense. His most recent conviction is his third conviction on a firearms related offense. *Parole/Probation Revocation and Sentencing Transcript, 3/9/16, p. 14.* The Defendant's choices show his inability to comply with probation's requirements and the necessity of the sentence imposed. Moreover, the Defendant's prompt relapse after being on supervision for such a short period of time shows he has not made a meaningful effort to reform.

11

He was afforded every possible chance to prove he could be a productive member of society yet refused to follow the rules of probation and chose to commit new crimes involving guns. *Parole/Probation Revocation and Sentencing Transcript, 3/9/16, p. 14, 18.* Though the Defendant clearly had the support of his family, he failed to utilize this support at every turn, instead placing himself in a situation where he became a serious threat to other members of the community.

Given the Defendant's previous gun charges, the Defendant was no stranger to the law, its requirements, or the conditions of probation. Along with the impact of the crimes on the community, and the fact the crimes were committed after the Defendant had been on probation for a short time, the sentence was not manifestly excessive.

Appellant next claims there was insufficient evidence presented at trial to support the Firearms Not to be Carried Without a License charge because the Commonwealth did not present testimony of the actual barrel length of the alleged firearm. This contention is contradicted by the record.

The governing statute for this offense provides in part as follows:

**§6106 Firearms not to be carried without a license**

(a) Offense defined.—

 (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

The Crimes Code defines "firearm" in the following manner:

**§6102 Definitions**

**"Firearm."** Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle, or shotgun with an overall length

12

of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt, or cylinder, whichever is applicable.

Direct and circumstantial evidence was presented at trial regarding the size of the gun. Mr. Leggiero confirmed he described the gun he saw as "large," "about ten inches long," and "chrome" in color. *Jury Trial Transcript, Day 2, 2/2/16, p. 16.* Additionally, Ms. Flemings described seeing the Defendant pull the gun out of his pocket. *Id. at 40.* Mr. Hemphill's stated in his interview with police that the shooter had a "Glock," which is a type of handgun that is not a revolver. *See Derrick Hemphill Disk Redacted 2/1/16.* This information allowed the jury to corroborate Leggiero's testimony, and to properly infer the gun would necessarily have to be small enough to fit inside a jeans pocket, but large enough to be seen by Leggiero a short distance away.

Additionally, the testimony presented by Sergeant Anthony Ferraro of the Pennsylvania State Police showed the projectiles found at the scene could only have been fired from one of four types of firearms, all different makes or models of handguns. *Jury Trial Transcript, Day 2, 2/2/16, p. 123, 127.*

The combined testimony of Leggiero, Hemphill, Flemings, and Ferraro when viewed in a light most favorable to the Commonwealth supports the jury's reasonable inference and determination the weapon in question was not a rifle or a gun in excess of twenty-six inches. Therefore, Defendant's second issue fails to entitle him to relief.

The Defendant's final allegation that the jury's decision to convict on all remaining charges was against the weight of the evidence was not properly preserved for appeal and affords him no basis for relief.

Pennsylvania Rule of Criminal Procedure Rule 607 provides as follows:

13

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;
(2) by written motion at any time before sentencing; or
(3) in a post-sentence motion.

Furthermore, the *Comment* to this Rule states its purpose is to "make clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived. Appellate review of a weight of the evidence claim is limited to a review of the judge's exercise of discretion." *Id.*

The Defendant did not present a weight of the evidence claim orally or in writing before sentencing, or in a post-sentence motion. Thus, his claim on this basis is waived. *Com.v. Bryant, 57 A.3d 191,196 (2012).*

## CONCLUSION

All issues raised by defendant are without legal support. The sentence was not manifestly excessive given the Defendant's prior charges, the fact the crimes were committed while he was on supervision and the impact of the crimes on the community. Further, the Commonwealth provided sufficient evidence to allow the jury to reasonably conclude the firearm carried by the Defendant met the requirements of the statute. Finally, his challenge to the weight of the evidence is waived for failing to raise the issue at any time before sentencing or in a post-sentence motion. It is therefore requested the Superior Court affirm the judgment of sentence.

Dated this ___13___ day of July, 2016.

BY THE COURT:

_____ J.
ROBERT A. SAMBROAK, JR.

14